

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

**ENTERED**
**06/25/2013**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| | § | |
| **BALLENGER CONSTRUCTION** | § | |
| **COMPANY** | § | **Case No. 12-20645** |
| | § | 426 |
| **Debtor.** | § | |
| | § | |

## ORDER AUTHORIZING AND APPROVING THE SALE OF REAL PROPERTY IN KENDALL COUNTY, TEXAS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES OUTSIDE THE ORDINARY COURSE OF BUSINESS

On this date came on to be heard the Debtor's *Motion for Entry of Order Authorizing and Approving the Sale of Real Property Free and Clear of All Liens, Claims and Encumbrances Outside the Ordinary Course of Business* (the "Sale Motion"). In the Sale Motion, the Debtor seeks approval of the sale of 181 acres of land located in Kendall County, Texas (the "Real Property"). Unless otherwise defined in this Order, capitalized terms used herein shall have the meanings ascribed to them in the Motion. Upon considering the pleadings and argument of counsel, this Court has determined the immediate sale of the Real Property in the ordinary course of business and as set forth in Exhibit "A" to the Sale Motion is in the best interest of the Debtor and its estate, for good cause shown, the Court finds as follows:

A.     On December 7, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is in the process of liquidating its assets and remains a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.     No trustee, examiner, or official committee has been appointed.

-1-

C.    This Court has jurisdiction over this matter and the parties and property affected thereby, pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 363. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    Due and adequate notice of the filing of the Sale Motion was given by service of the Sale Motion in accordance with Federal Rules of Bankruptcy Procedure 2002 and 6004, as evidenced by the filing of the certificate of service attached to the Sale Motion.

E.    The Debtor has established that there are sufficient business justifications to immediately authorize the sale of the Real Property, as described in Exhibit "A" to the Sale Motion.

F.    The Debtor is authorized to immediately consummate the sale of the Real Property as described in Exhibit "A" to the Sale Motion.

G.    The sale of the real property identified in Exhibit "A" to the Sale Motion as proposed herein is reasonable and proper under Sections 363 the Bankruptcy Code and is in the best interests of the Debtor, its creditors and the estate. Accordingly, ample cause exists for the immediate sale of the Real Property.

H.    The Debtor is authorized to take such action and to execute and deliver any deeds and such other documents, agreements and instruments as may be necessary or advisable to effectuate the terms of the sale of the Real Property.

I.    This Court herby designates the proposed buyer, 1604 Special, Ltd. and/or Assigns (the "Buyer") of the Real Property as a good faith purchaser.

J.    The proposed sale of the Real Property as contemplated in the Sale Motion is in the

best interests of the Debtor, creditors and interested parties.

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, AS FOLLOWS:

1.      The Sale Motion is granted, as set forth herein.

2.      The contract (attached as Exhibit "A" to the Sale Motion" and hereinafter referred to as the "Contract") is approved in all respects, and the Debtor is authorized to sell to the Buyer described therein or its assigns (without any further consent required of Debtor or the Court) the Real Property on terms and conditions substantially in accordance with those set forth in the contract.

3.      The sale of the Real Property to the Buyer (or assignees, if any) in accordance with this Order pursuant to Section 363 of the Bankruptcy Code, shall be free and clear of any and all liens, claims, encumbrances, and other interests, with any and all such liens, claims, encumbrances, and other interests attaching to the net proceeds of the sale in the same validity and in the same order of priority as in the underlying Real Property being sold.  The claims, liens, encumbrances, and other interests, if any, asserted by any person or entity in or to any of the purchase price proceeds shall be in the same priority and subject to the same infirmities and defenses as existed with respect to the claims, liens, encumbrances, and other interests in the property prior to the sales. Furthermore, the sale of the Real Property approved by this order shall be on an "as is, where is basis" and the Debtor assumes no liability and shall be deemed, after consummation of the sale, released from any liability as a result of this sale and/or condition of the Real Property. Seller shall close in accordance with the terms of the Contract.

5.      The sales price shall be $1,050,000.00; provided, however, if at the time of closing the net proceeds to Debtor should be less than $1,000,000.00, then either the sales price shall be increased to an amount that will result in net proceeds to Debtor of $1,000,000.00 or , all necessary

closing costs shall be allocated between Debtor and 1604 Special so that the line (currently 603), Cash to Seller, on the HUD-1 settlement statement will be at least $1,000,000.00.

6.     The Debtor is authorized to perform and consummate the transactions contemplated by the contract on the Real Property and to execute and deliver all documents and instruments thereby required, and to transfer to the Buyer all right, title, and interest in and to the Real Property.

7.     Pursuant to Sections 105(a) and 363 of the Bankruptcy Code, this Order shall and does, as of the Closing Date and the payment of the consideration described in the Exhibit "A" attached to the Sale Motion, divest the Debtor and its estate of all right, title, and interest in the Real Property and vests good, valid and marketable title in and to the Real Property in the Buyer, free and clear of any and all liens, mortgages, security interests, pledges, hypothecations, encumbrances, restrictions, reservations, encroachments, infringements, easements, conditional sale agreements, title retention or other security arrangements, defects of title, adverse rights or interests, charges or claims of any nature whatsoever.

8.     If any person or entity that has filed financing statements, deeds of trust or other documents or agreements evidencing liens on or interests in the Real Property shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens or other interests which the person or entity has with respect to the Real Property , all liens or interests identified in any financing statements, agreements or other documents shall be deemed released, terminated and satisfied, and this Order is and shall be binding upon and govern the acts of all entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal,

state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or inure any title or state of title in or to the Real Property.

9.       Because the Buyer has acted in good faith, pursuant to Section 363(m) of the Bankruptcy Code, the reversal or modification of this Order on appeal will not affect the validity of the transfer of the Real Property to the Buyer or any other transactions contemplated by the Exhibit "A" to the Sale Motion and/or authorized by this Order, unless the same is stayed pending appeal prior to closing under the Exhibit "A" to the Sale Motion.

10.      The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 105, 363 and 506 to determine the matters addressed herein as core proceedings under 28 U.S.C. § 157(b).  This Court shall retain jurisdiction over any issues relating to the Exhibit "A" to the Sale Motion and to enforce its Order pursuant to 11 U.S.C. § 105.  Any suit, action, proceeding, claim or dispute under or related to this Order shall be determined by this Court as a core proceeding under 11 U.S.C. § 157(b) and this Court retains jurisdiction with respect thereto.

11.      For purposes of the sale of the Real Property, this is a final order and is enforceable upon entry by the Clerk of the Court.  To the extent necessary under the Federal Rules of Bankruptcy Procedure 5003, 9014, 9021 and 9002, this Court expressly finds that there is no just reason for delay in this implementation of this Order and expressly directs entry of judgment as set forth herein and the stay of Federal Rules of Bankruptcy Procedure Rules 6004(h) is hereby waived, modified and shall not apply to the sale of the Real Property, and the Debtor is authorized to take all actions and enter into all transactions authorized by this Order immediately.  If the Debtor and the Buyer are

prepared to close any sale within 14 days after the entry of this order, the title company is ordered to consummate such sale within 14 days, unless this order is stayed on appeal.

12.     The sale of Real Property does not and will not subject or expose the Buyer, his successors or assigns, to any liability, claim, cause of action or remedy by reason of such sale and transfer, including, without limitation, any claim, cause of action or remedy based on any theory of successor or transferee liability and that the Buyer shall not assume any liability or obligations of the Debtors, fixed or contingent, disclosed or undisclosed, or any liability for any claims, debts, defaults, duties, obligations or liabilities of seller of any kind or nature, whether known or unknown, contingent or fixed, all of which, to the extent that they existed prior to the Closing Date.  However, the Buyer is purchasing the Real Property in its "as is, where is" condition.

13.     The title company closing the sale of the Real Property is authorized to and shall, at closing, pay the amount of the sale proceeds that any secured party (including all taxing authorities) who has a lien on the property has agreed to collect at closing in order to release such lien, and is also authorized to pay to a 4% broker commission as outlined in Exhibit "A" to the Sale Motion.

14.     Each and every federal, state and local government agency or department are directed to accept (and file, if appropriate) any and all documents and instruments necessary to consummate the transactions contemplated by the Exhibit "A" to the Sale Motion.

15.     This Court retains exclusive jurisdiction to resolve any dispute arising from or related to the Exhibit "A" to the Sale Motion.  The Court specifically retains jurisdiction over the Real Property, Texas and the Exhibit "A" to the Sale Motion, to the extent that the sale is not closed as a result of the inability to satisfy the conditions precedent to Closing as described in the Exhibit "A" to the Sale Motion.

16.     Buyer shall take the property subject to ad valorem tax liens which secure payment of the 2013 ad valorem taxes assessed or to be assessed against the Property, and these liens shall remain until the 2013 taxes are paid in full.

17.     Pursuant to Federal Rule of Civil Procedure 52, the Court's findings of fact stated orally and reported in open court are hereby incorporated herein by reference, the same as if fully copied and set forth at length.

Dated:

June 25, 2013

_____
HON. RICHARD S. SCHMIDT
UNITED STATES BANKRUPTCY JUDGE

**Submitted by:**
LANGLEY & BANACK, INC.
745 E. Mulberry, Suite 900
San Antonio, TX 78216
Telephone: (210) 736-6600
Facsimile: (210) 735-6889
DAVID S. GRAGG
R. GLEN AYERS
ALLEN M. DeBARD

ATTORNEYS FOR BALLENGER
CONSTRUCTION COMPANY

# EXHIBIT "A"

# FARM AND RANCH CONTRACT

**1. PARTIES:** The parties to this contract are <u>Ballenger Construction Company</u> (Seller) and <u>1604 Special, Ltd and/or Assigns</u> (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property described below.

**2. PROPERTY:** The land, improvements, accessories and crops are collectively referred to as the "Property."

A. LAND: The land situated in Kendall County, Texas, which is more particularly described as

181.81 acres more particularly described in Exhibit "A" attached hereto and incorporated herein for all purposes.

The 181.81 acres shall be conveyed together with all rights, privileges, and appurtenances pertaining thereto, including but not limited to all water rights, claims, permits, strips and gores, easements, and cooperative or association memberships.

B. IMPROVEMENTS:

(1) FARM and RANCH IMPROVEMENTS: The following **permanently installed and built-in items**, if any: windmills, tanks, barns, pens, fences, gates, sheds, outbuildings, and corrals.

(2) RESIDENTIAL IMPROVEMENTS: None.

C. ACCESSORIES:
(1) FARM AND RANCH ACCESSORIES: The following described related accessories:
___ portable buildings ___ hunting blinds ___ game feeders ___ livestock feeders and troughs ___ irrigation equipment ___ fuel tanks ___ submersible pumps ___ pressure tanks ___ corrals _X_ gates ___ chutes ___ other:_____

(2) RESIDENTIAL ACCESSORIES: None.

D. CROPS: None.

E. EXCLUSIONS: None.

F. RESERVATIONS: None.

**3. SALES PRICE:** The Sales Price shall be $1,050,000.00; provided, however, notwithstanding anything contained herein to the contrary, if at the time of closing the net proceeds to Seller should be less than $1,000,000.00, then the Sales Price shall be increased to an amount that will result in net proceeds to Seller of $1,000,000.00.   To ensure net proceeds to Seller of $1,000,000.00 all necessary closing costs shall be allocated between Seller and Buyer so that the line (currently 603), Cash to Seller, on the HUD-1 settlement statement will be at least $1,000,000.00.

The Sales Price will not be adjusted based on any survey provided for in Paragraph 6C.

Farm and Ranch Contract
Page 1

Sellers Initials          Buyers Initials

**4. FINANCING:** Not applicable.

**5. EARNEST MONEY:** Upon execution of this contract by both parties, Buyer shall deposit $10,000.00__ as earnest money with ___Texas Investors Title__ , as escrow agent, at __101 South Main Street, Suite C, Boerne, Texas 78006__ (address). If Buyer fails to deposit the earnest money as required by this contract, Buyer will be in default.

**6. TITLE POLICY AND SURVEY:**

A. TITLE POLICY: Seller shall furnish to Buyer, at Buyer's expense, an owner policy of title insurance (Title Policy) issued by __Texas Investors Title__ (Title Company) in the amount of the Sales Price. The title policy shall be dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:

    (1)    The standard printed exception for standby fees, taxes and assessments.
    (2)    Liens created as part of the financing described in Paragraph 4.
    (3)    Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
    (4)    he standard printed exception as to marital rights.
    (5    The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
    (6)    The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements. Buyer, at Buyer's expense, may have the exception amended to read, "shortages in area."

B. COMMITMENT: Within the later of (a) five days after the Bankruptcy Court approves this sale as set forth in the Special Provisions of this contract or (b) 10 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to mail or hand deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or the Closing Date, whichever is earlier.

C. SURVEY: Any survey obtained must be made by a registered professional land surveyor acceptable to the Title Company or any Lender.

    (1)    Within 7 days after the execution of this Contract by both parties, Seller shall furnish to Buyer a copy of Seller's existing survey of the 181.81 acres. If it is necessary to have Seller's existing survey re-certified, then Buyer will pay the cost for re-certification. If the survey is not acceptable to Buyer or Buyer's Lender, then Buyer may obtain a new survey at Buyer's expense. Seller is under no obligation to provide Buyer with a new survey.

D. OBJECTIONS: Within __10 business__ days after Buyer receives the Commitment, Exception Documents and the survey, Buyer may object in writing to (i) defects, exceptions, or

Farm and Ranch Contract
Page 2

Sellers Initials          Buyers Initials

encumbrances to title: disclosed on the survey other than items 6A(1) through (5) above; disclosed in the Commitment other than items 6A(1) through (6) above; (ii) any portion of the Property lying in the 100 year flood plain as shown on the current Federal Emergency Management Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived. Seller shall cure the timely objections of Buyer or any third party lender within 10 business days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 10 business day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

**E. EXCEPTION DOCUMENTS:** Prior to the execution of the contract, Seller has provided Buyer with copies of the exception documents listed below or on the attached exhibit.  Matters reflected in the exception documents listed below or on an attached exhibit will be permitted exceptions in the Title Policy and will not be a basis for objection to title:

| Documents | Date | Recording Reference |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

**F. SURFACE LEASES:** Prior to the execution of the Contract, Seller has provided Buyer with copies of written leases and given notice of oral leases ("Leases") listed below or on the attached exhibit.  Seller agrees to terminate the existing Hunting Lease such that the property is free of any leases at the time of closing.

**G. TITLE NOTICES:**

**(1) ABSTRACT OR TITLE POLICY:** Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

**(2) STATUTORY TAX DISTRICTS:** If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water, Code requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

**(3) TIDE WATERS:** If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract.

**(4) ANNEXATION:** If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in

Sellers Initials                    Buyers Initials

the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(5) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by§13.257, Texas Water Code, requires a notice regarding the cost of providing water or sewer services to the Property. The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(6) PUBLIC IMPROVEMENT DISTRICTS: If the property is in a public improvement district, §5.014, Texas Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property, you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dated of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

(7) TEXAS AGRICULTURAL DEVELOPMENT DISTRICT: The Property is not located in a Texas Agricultural Development District.

## 7. PROPERTY CONDITION:

A. INSPECTIONS, ACCESS AND UTILITIES: Buyer may have the Property inspected by inspectors selected by Buyer and licensed or permitted by law to make the requested inspections. Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times in order to conduct said inspections.
**NOTICE:** Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice):

(1) The Texas Property Code does not require this Seller to furnish the Notice.

C. ACCEPTANCE OF PROPERTY CONDITION: Buyer accepts the Property in its present "As Is" "Where Is" condition. The Special Warranty Deed conveying the property shall contain the

Farm and Ranch Contract
Page 4

Sellers Initials _____       Buyers Initials _____

following clause:

> Grantee acknowledges and agrees that Grantee is taking the property "As Is" with any and all latent and patent defects and that there is no warranty by Grantor that the property has any particular financial value and is fit for a particular purpose. Grantee acknowledges and stipulates that Grantee is not relying on any representation, statement, or any other assertion with respect to the property condition, but is relying on Grantee's examination of the property. Grantor makes no warranty or representation, express or implied, as to the condition, access to the property, habitability, merchantability, or fitness for a particular purpose of the property.

D. COMPLETION OF REPAIRS: None.

E. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property.

F. SELLER'S DISCLOSURES: Except as otherwise disclosed in this contract, Seller has no knowledge of the following:

- (1) any flooding of the Property which has had a material adverse effect on the use of the Property;
- (2) any pending or threatened litigation, condemnation, or special assessment affecting the Property;
- (3) any environmental hazards or conditions which materially affect the Property;
- (4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
- (5) any wetlands, as defined by federal or state law or regulation, affecting the Property; or
- (6) any threatened or endangered species or their habitat affecting the Property.

G. RESIDENTIAL SERVICE CONTRACTS: Not Applicable

H. GOVERNMENT PROGRAMS: The Property is subject to the government programs listed below or on the attached exhibit:     None                                                             .

**8. BROKERS' FEES:** Seller will pay Ray Land Company of Texas (Brokers License #9000846) a total commission of four percent (4%) of the total sales price upon the closing and funding of the transaction. Seller/Buyer authorizes and directs Escrow Agent, Greg M. Powers, to pay Ray Land Company of Texas ((Brokers License #9000846) from the proceeds at closing.

**9. CLOSING:**

A. The closing of the sale will be on or before _July 11, 2013_, or within 7 days after objections to matters disclosed in the Commitment or by the survey have been cured, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:

Farm and Ranch Contract
Page 5

Sellers Initials        Buyers Initials

(1)   Seller shall execute and deliver a special warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6, an assignment of Leases, and furnish tax statements or certificates showing no delinquent taxes on the Property.

(2)   Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.

(3)   Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents required of them by this contract, the Commitment or law necessary for the closing of the sale and the issuance of the Title Policy.

C. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

D. All covenants, representations and warranties in this contract survive closing.

**10. POSSESSION:** Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted upon closing and funding. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties.

**11. SPECIAL PROVISIONS:**

A.   This Contract is specifically contingent upon Seller obtaining an order from the United States Bankruptcy Court for the Southern District of Texas - Corpus Christi Division conveying the property free and clear of all liens, claims and encumbrances under Section 363 of the Bankruptcy Code in a form and substance acceptable to Buyer and Buyer's counsel. Seller shall file within three (3) days of the execution of this Contract by all parties a motion with the United States Bankruptcy Court for authorization to sell the property according to the terms and conditions of this Contract. The Sale Order presented to the Bankruptcy court for approval shall be approved by Buyer's attorney as to form and substance.

B.   Buyer and Seller agree that the closing of this transaction and all closing documents will be prepared by the law offices of Greg M. Powers, Attorney at Law. All of Buyer's closing documents will be forwarded to Buyer and Buyer's attorney for review prior to closing. Buyer will not be required to close in the law offices of Greg M. Powers, but may close through overnight delivery.

C.   Seller and Buyer agree that the warranty deed conveying the property shall contain a provision that restricts mobile homes or manufactured houses from being located on the subject property. In the alternative, Seller and Buyer agree that a deed restriction may be filed of record restricting mobile homes and manufactured houses from being located on the property.

D.   Buyer may assign this contract without the express written consent of Seller.

E.   Property is to convey with no surface or mining lease in place.

F.   Property is to convey with all existing mined stockpiled materials to remain on

Farm and Ranch Contract
Page 6

_____
Sellers Initials

_____
Buyers Initials

the property.

G.  Seller will provide Buyer with any documents Seller may possess regarding any prior environmental assessments or inspections pertaining to the subject property within ten (10) days after the effective date of this contract. If Buyer is not satisfied with the environmental assessments or inspections, then within three (3) days after receipt of these documents Buyer may terminate the contract and have the earnest money returned to Buyer.

H.  Notwithstanding anything contained herein to the contrary, this contract shall become null and void if closing and funding does not occur within thirty (30) days following the entry of the Sale Order by the Bankruptcy Court. The Sale Order shall also contain a similar provision that if closing and funding does not occur within thirty (30) days of entry of the Sale Order by the Bankruptcy Court, either party may petition the Court to have the Sale Order set aside.

## 12. SETTLEMENT AND OTHER EXPENSES:

A. The following expenses must be paid at or prior to closing:

(1)  Expenses payable by Seller (Seller's Expenses):

(a)  Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.

(b)  Seller shall also pay an amount not to exceed $ _N/A_ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veteran's Housing Assistance Program or other governmental loan programs; Buyer's prepaid items; other Buyer's expenses.

(2)  Expenses payable by Buyer (Buyer's Expenses):

(a)  Recording fees; copies of easements and restrictions; one-half of escrow fee; courier fee, and wire transfer fees.

## 13. PRORATIONS AND ROLLBACK TAXES:

A. PRORATIONS: Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Rentals which are unknown at time of closing will be prorated between Buyer and Seller when they become known.

B. ROLLBACK TAXES: If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer. If Seller's change in use of the Property prior to closing or denial of a special use valuation on the Property claimed by Seller results in

Farm and Ranch Contract
Page 7

Sellers Initials                    Buyers Initials

Assessments for periods prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any obligations of Seller under Paragraph 7.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If, due to factors beyond Seller's control, Seller fails within the time allowed to make any non-casualty repairs or deliver the Commitment, or survey, if required of Seller, Buyer may (a) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (b) terminate this contract as the sole remedy and receive the earnest money. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** The prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party.

**18. ESCROW:** The escrow agent is not (a) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (b) liable for interest on the earnest money and (c) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent. At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If both parties make written demand for the earnest money, escrow agent may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of escrow agent from all parties. If one party makes written demand for the earnest money, escrow agent shall give notice of the demand by providing to the other party a copy of the demand. If escrow agent does not receive written objection to the demand from the other party within 30 days after notice to the other party, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow

Farm and Ranch Contract
Page 8

Sellers Initials          Buyers Initials

agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money. Escrow agent's notice to the other party will be effective when deposited in the U. S. Mail, postage prepaid, certified mail, return receipt requested, addressed to the other party at such party's address shown below. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** Seller represents that as of the Closing Date (a) there will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing payment of any loans assumed by Buyer and (b) assumed loans will not be in default. If any representation of Seller in this contract is untrue on the Closing Date, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile as follows:

To Buyer:

1604 Special, Ltd.
7373 Broadway #402
San Antonio, Texas 78209
jeff@rochellepc.com

To Seller:

Ballenger Construction Company
24200 North FM 509
Harlingen, Texas 78550

with copy to:

William B. Kingman
Attorney at Law
4040 Broadway, Suite 450
San Antonio, Texas 78209
Phone: 210-829-1199
Fax: 210-821-1114
Email: bkingman@kingmanlaw.com

with copy to:

Greg M. Powers
Attorney at Law
1217 East Harrison
Harlingen, Texas 78550
Phone: 956-423-6000
Fax: 956-423-2300
Email: gmpowerslaw@gmail.com

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement.

**23. CONSULT AN ATTORNEY:** Real estate licensees cannot give legal advice. READ THIS CONTRACT CAREFULLY. If you do not understand the effect of this contract, consult an attorney BEFORE signing.

SELLER'S ATTORNEY

Farm and Ranch Contract
Page 9

Sellers Initials          Buyers Initials

Greg M. Powers
Attorney At Law
1217 East Harrison
Harlingen, Texas 78550
Phone: 956-423-6000
Fax: 956-423-2300
Email: gmpowerslaw@gmail.com

Sellers Initials

Buyers Initials

**BUYER'S ATTORNEY**

William B. Kingman
4040 Broadway, Suite 430
San Antonio, Texas 78209
Phone: (210) 829-1660
Fax: (210) 829-1641
Email: bkingman@kingmanlaw.com

**24. EXPIRATION:** The execution of this Farm and Ranch Contract by Buyer and the delivery hereof to Seller shall constitute an offer which shall be automatically revoked, withdrawn and terminated unless Seller accepts the same by executing this Farm and Ranch Contract and delivering one fully executed copy thereof to Buyer prior to 5:00 p.m. (Central Standard Time) on June 14, 2013.

**EXECUTED this _____ day of _____, 2013 (EFFECTIVE DATE).**

BUYER:                                SELLER:

1604 SPECIAL, LTD                     BALLENGER CONSTRUCTION COMPANY
and/or Assigns


By:_____         By:_____
   Jeffrey A. Rochelle, Authorized Agent      Joe Charles Ballenger, Chairman


---

### EARNEST MONEY RECEIPT

Receipt of $_____ Earnest Money in the form of _____ _____ is acknowledged and is accepted subject to the terms and conditions of the Earnest Money Contract.

Escrow Agent:      _____

                   _____

                   _____


              By:_____

Date:         _____


Farm and Ranch Contract
Page 11

Sellers Initials          Buyers Initials

# MATKIN-HOOVER
## ENGINEERING & SURVEYING
8 Spencer Road, Suite 300, Boerne, Texas 78006
Phone: 830-249-0600   FAX: 830-249-0699

### Field Notes for a 181.818 Acre Tract of Land

BEING A 181.818 ACRE TRACT OF LAND OUT OF EMILIE HOFHEINZ SURVEY NO. 132, ABSTRACT NO. 819, THE CHARLES SEIDENSTICKER AND HENRY SEIDENSTICKER SURVEY NO. 1133, ABSTRACT NO. 1303 (SCRAP FILE 13256) AND THE JESUSA URON DE NAVARRO SURVEY NO. 261, ABSTRACT NO. 732, KENDALL COUNTY, TEXAS, SAID 181.818 ACRE TRACT ALSO BEING A PORTION OF THAT CERTAIN 2761.6 ACRE TRACT CONVEYED TO 5 BAR 5 LTD., A TEXAS LIMITED PARTNERSHIP BY DEED RECORDED IN VOLUME 503, PAGES 508-511, OFFICIAL RECORDS, KENDALL COUNTY, TEXAS, SAID 181.818 ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

Beginning at a ½" iron rod found in the north right-of-way line of F.M. 473 for the southeast corner of the herein described tract and the southeast corner of the above referenced 2761.6 acre tract, said point also being at the beginning of a curve to the left whose central angle is 03 degrees 21 minutes 35 seconds, whose radius is 11509.15 feet and whose chord bears South 74 degrees 57 minutes 01 seconds West, a distance of 674.77 feet;

Thence, with the north right-of-way line of F.M. 473, a south line of said 2761.6 acre tract, along the arc of said curve to the left, a distance of 674.87 feet to a Texas Department of Transportation concrete right-of-way marker;

Thence, continuing with the north right-of-way line of F.M. 473, a south line of said 2761.6 acre tract, South 73 degrees 07 minutes 35 seconds West, a distance of 385.29 feet to a Texas Department of Transportation concrete right-of-way marker at the beginning of a curve to the right whose central angle is 14 degrees 09 minutes 14 seconds, whose radius is 2814.80 feet and whose chord bears South 79 degrees 41 minutes 34 seconds West, a distance of 693.58 feet;

Thence, continuing with the north right-of-way line of F.M. 473, a south line of said 2761.6 acre tract, along the arc of said curve to the right, a distance of 695.34 feet to a Texas Department of Transportation concrete right-of-way marker;

Thence, continuing with the north right-of-way line of F.M. 473, a south line of said 2761.6 acre tract, South 87 degrees 00 minutes 47 seconds West, a distance of 517.71 feet to a ½" iron rod set with a red "Matkin-Hoover Eng. & Survey" plastic cap for the southwest corner of the herein described tract, said point bears North 87 degrees 00 minutes 47 seconds East, a distance of 689.10 feet from a Texas Department of Transportation concrete right-of-way marker;

Thence, departing the north right-of-way line of F.M. 473, severing said 2761.6 acre tract, the following two (2) courses and distances:

North 00 degrees 00 minutes 00 seconds East, a distance of 3760.90 feet to a ½" iron rod set with a red "Matkin-Hoover Eng. & Survey" plastic cap for the northwest corner of the herein described tract;

and North 90 degrees 00 minutes 00 seconds East, a distance of 2187.88 feet to a ½" iron rod found with an orange "Pfeiffer" plastic cap in the easterly line of said 2761.6 acre tract for the northeast corner of the herein described tract, said point also being the southwest corner of that

# EXHIBIT A

certain 2130.78 acre tract recorded in Volume 613, Pages 491-500, Official Records, Kendall County, Texas and the northwest corner of that certain 159.815 acre tract recorded in Volume 1098, Pages 209-212, Official Records, Kendall County, Texas;

Thence, with multiple east lines of said 2761.6 acre tract and multiple west lines of said 159.815 acre tract, the following thirteen (13) courses and distances:

South 00 degrees 21 minutes 49 seconds East, a distance of 241.12 feet to a ½" iron rod found for angle;

South 00 degrees 33 minutes 06 seconds East, a distance of 601.33 feet to a ½" iron rod found for angle;

South 00 degrees 40 minutes 29 seconds East, a distance of 139.67 feet to a ½" iron rod found for angle;

South 00 degrees 23 minutes 26 seconds East, a distance of 187.71 feet to a ½" iron rod found for angle;

South 00 degrees 04 minutes 54 seconds East, a distance of 317.90 feet to a ½" iron rod found for angle;

South 00 degrees 03 minutes 23 seconds West, a distance of 325.96 feet to a ½" iron rod found for angle;

South 00 degrees 17 minutes 45 seconds East, a distance of 224.29 feet to a ½" iron rod found for angle;

South 00 degrees 59 minutes 47 seconds East, a distance of 300.36 feet to a ½" iron rod set with a red "Matkin-Hoover Eng. & Survey" plastic cap for angle;

South 00 degrees 49 minutes 49 seconds East, a distance of 122.83 feet to a ½" iron rod found for angle;

South 00 degrees 26 minutes 26 seconds East, a distance of 144.54 feet to a ½" iron rod found for angle;

South 00 degrees 44 minutes 41 seconds East, a distance of 96.64 feet to a ½" iron rod found for angle;

South 00 degrees 54 minutes 28 seconds East, a distance of 226.57 feet to a ½" iron rod found for angle;

and South 01 degrees 04 minutes 09 seconds East, a distance of 394.08 feet to the Point of Beginning containing 181.818 acres.

Note: This description is based on an on the ground survey performed on November 2, 2009. The bearings are based on GPS Observations. A survey plat of the above described tract was prepared.

Wes Rexrode
Registered Professional Land Surveyor
No.6001        Job Number: 08-4055