IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CHAPTER 11 CASE** |
| **BALLENGER CONSTRUCTION** | § | |
| **COMPANY,** | § | **CASE NO. 12-20645-RSS** |
| | § | |
| **Debtor.** | § | |

# FIRST AMENDED DISCLOSURE STATEMENT TO CHAPTER 11 LIQUIDATING PLAN FOR BALLENGER CONSTRUCTION COMPANY

**LANGLEY & BANACK, INC.**
745 E. Mulberry, Suite 900
San Antonio, Texas 78212
(210) 736-6600 Telephone
(210) 735-6889 Telecopier

DAVID S. GRAGG
State Bar No. 08253300
R. GLEN AYERS
State Bar No. 01467500
ALLEN M. DeBARD
State Bar No. 24065132

**COUNSEL TO BALLENGER
CONSTRUCTION COMPANY**

## TABLE OF CONTENTS

I.  Introduction
II.  Plan Overview and Important Notice to Holders of Claims
III.  Hearings and Deadlines to Object
IV.  Information Concerning the Debtor
    A.  History of the Debtor
    B.  Factors Leading to Chapter 11 Filing
    C.  Filing of the Bankruptcy Case
    D.  Significant Events Occurring During the Chapter 11 Case
        1.  Financing Orders
        2.  Critical Vendor Payments
        3.  Approval of Bid Procedures
        4.  Retention of Debtor's Professionals
        5.  Appointment of the Committee
        6.  Professionals Hired by the Debtor
        7.  Resumption of the Sale Process
    E.  Related Entities
V.  Explanation of Chapter 11
    A.  Overview of Chapter 11
    B.  Plan of Reorganization
VI.  Overview of the Plan
    A.  General
    B.  Classification and Treatment Summary
        1.  Administrative Claims and Priority Tax Claims
        2.  Professional Fee Claims
        3.  Statutory Fees
        4.  Summary of Classified Claims and Interests
    C.  Executory Contracts and Unexpired Leases
    D.  Outline of Liquidating Trust
    E.  Disputed Claims
    F.  Means of Implementing the Plan
    G.  Services by and Fees for Professionals
    H.  Reserved Claims
    I.  Office of the United States Trustee
    J.  Effective Date Conditions
    K.  Retention of Jurisdiction
    L.  Modification or Withdrawal of the Plan
VII.  Confirmation of the Plan
    A.  Solicitation of Votes; Voting Procedures
    B.  Requirements for Confirmation of a Plan
VIII.  Risk Factors
    A.  Confirmation Risks
    B.  Conditions Precedent
    C.  Government Regulations
    D.  Transfer Restrictions

IX.     Liquidation Alternative to Confirmation and Consummation of the Plan
X.      Recommendation and Conclusion
XI.     Exhibits

**DISCLAIMER:    NEITHER THIS DISCLOSURE STATEMENT NOR THE SOLICITATION OF THE ACCOMPANYING PLAN HAS BEEN APPROVED BY THE BANKRUPTCY COURT.**

**AS OF THE FILING OF THIS DISCLOSURE STATEMENT, NO HEARING ON THE APPROVAL OF THE DISCLOSURE STATEMENT OR CONFIRMATION OF THE PLAN HAS BEEN SET. THE DEBTOR WILL PROVIDE SEPARATE NOTICE, CONSISTENT WITH APPLICABLE BANKRUPTCY RULES, OF ANY SUCH HEARINGS AND OF THE DEADLINES FIXED BY THE COURT FOR OBJECTION TO THE PLAN OR THIS DISCLOSURE STATEMENT.**

## I.      INTRODUCTION

Ballenger Construction Company, the debtor and debtor-in-possession in the above-captioned bankruptcy case (the "**Debtor**"), which case is pending before the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "**Bankruptcy Court**"), respectfully submits this *[Proposed] Disclosure Statement to Chapter 11 Liquidating Plan for Ballenger Construction Company* (as may be amended from time to time, the "**Disclosure Statement**").  This Disclosure Statement is to be used in connection with the Debtor's proposed *Chapter 11 Liquidating Plan for Ballenger Construction Company* (as may be amended from time to time, the "**Plan**").  A copy of the Plan, which has been filed contemporaneously herewith, is attached hereto as Exhibit "A."  Unless otherwise defined herein, capitalized terms used herein have the meanings ascribed to them in the Plan, in accordance with Section 1.2 of the Plan.

## II.     PLAN OVERVIEW AND IMPORTANT NOTICE TO HOLDERS OF CLAIMS

The Plan contemplates the transaction of all of the Estate's remaining assets to a Liquidating Trust.  The Liquidating Trustee will be an independent responsible third party disclosed in a Plan Supplement.  Throughout the case, the Debtor has sold many assets through auctions or individual sales pursuant to section 363 of the Bankruptcy Code and Court Orders.  The Liquidating Trustee shall then liquidate assets for the benefit of the Liquidating Trust Beneficiaries which are the Holders of Allowed Claims.

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR ON YOUR DECISION TO SUPPORT CONFIRMATION OF THE PLAN.  PLEASE READ THIS DISCLOSURE STATEMENT AND THE PLAN CAREFULLY AND IN THEIR ENTIRETY.**

The Debtor submits that this Disclosure Statement contains information of a kind, and in sufficient detail, adequate to enable a hypothetical, reasonable investor, typical of the Holders of Claims against and Interests in the Debtor, to make an informed judgment with respect to the Plan.

Except for the Debtor and its professionals, no person has been authorized to use or promulgate any information concerning the Debtor or the Plan, other than the information contained in the Plan.  No Holder of a Claim against or Interest in the Debtor's Estate should rely on any information relating to the Debtor or the Plan other than what is contained in the Disclosure Statement, the Exhibits hereto, the Plan, and the Exhibits thereto.  Unless otherwise indicated, the sources of all information set forth in the Plan are the Debtor, and the Debtor's professionals.

## III.    HEARINGS AND DEADLINES TO OBJECT

The Debtor has not requested hearings on the approval of the Disclosure Statement and the Confirmation of the Plan.  A hearing on the Disclosure Statement will

be set by the Court at a date and time convenient with the Court that is also in compliance with the necessary notice provisions of the Bankruptcy Code. Also, the Confirmation Hearing has not been set. As required under the applicable Bankruptcy Rules, the Debtor will provide all parties in interest at least twenty-eight (28) days' notice of the hearing to approve this Disclosure Statement, or obtain an order allowing a shortened notice period, and will further provide separate notice of all relevant deadlines fixed by the Bankruptcy Court regarding objections and voting.

## IV.    INFORMATION CONCERNING THE DEBTOR

### A.    History of the Debtor

The Debtor is a construction company founded in 1937 with offices located in Harlingen, Texas. The Debtor's core business is construction of highways, streets and roads although it also provides material processing, asphalt work and drainage services. Some of the Debtor's clients include cities, municipalities, and the Texas Department of Transportation.

Although the Debtor is based in the Rio Grande Valley, it had projects throughout South Texas including San Antonio and further north to Austin. Due to financial difficulties, beginning in third quarter of 2012, the Debtor's two sureties and/or their subcontractors or assignees are currently in the process of completing the Debtor's outstanding construction contracts. The surety companies are Colonial American Casualty and Surety Company, Fidelity Deposit Company of Maryland ("Zurich") and Liberty Mutual Insurance Company ("Liberty").

The Debtor owns real and personal property pledged as collateral to Frost Bank ("Frost") and other secured creditors. Debtor's personal property consists primarily of construction equipment used in the Debtor's business. Due to its deteriorating financial condition and wanting to preserve its assets for the benefit of creditors, the Debtor has filed this Chapter 11 proceeding.

### B.    Factors Leadings to Chapter 11 Filing

To the extent it is valid, Debtor entered into an indemnity agreement with Liberty under which Debtor agreed, under certain circumstances, to indemnify Liberty and Liberty agreed to provide bonds on projects. Liberty issued bid bonds (bonds intended to guarantee that the winning bidder will undertake the contract) for projects bid on by Debtor—specifically the Cameron County RMA 550 project and the Edinburg Airport Tarmac and runway improvement project in Hidalgo County. Despite the fact that Debtor

was the low bidder and despite Liberty representations that it would issue the required bonds, Liberty refused to issue the necessary payment and performance bonds. Such refusal set into motion a series of events leading to a liquidity crisis and caused a number of issues for Debtor, specifically including damages to Debtor and the ultimate bankruptcy of Debtor. Additionally, Liberty seized various books, records and accounts in the possession of Debtor, delayed in issuing payments to various subcontractors and suppliers, and required Debtor's agreement to various documents. At the time it took over Defendant's business, Liberty requested Defendant's cooperation in working through the various projects and assured Defendant of a "soft landing" if it provided information, cooperation and worked with Liberty. Despite the fact that Debtor did, in fact, cooperate fully with Liberty, Liberty did not provide, nor did it ever intend to provide, such a "soft landing." All of these issues further exacerbated the problems faced by Debtor that were caused by Liberty.

At approximately the same time, Zurich also took over several of the operations of Debtor. Zurich seized various books, accounts and records in the possession of Debtor, delayed in issuing payments to various subcontractors, suppliers and vendors, and required Debtor's agreement to various documents. At the time it took over Defendant's business, Zurich requested Defendant's cooperation in working through the various projects. Zurich late and slowed paid vendors, that resulted in increased costs of procurement and the reluctance of suppliers to provide necessary fuel and material. Additionally, Zurich seized documents, funds and project records that made it impossible for Debtor to operate.

C.      **Filing of the Bankruptcy Case**

On December 7, 2012, the Debtor commenced this chapter 11 case by filing a voluntary chapter 11 petition.   Contemporaneously with the filing of its chapter 11 petition, the Debtor also filed certain "first day" motions, requesting emergency relief from the Bankruptcy Court, including requests to (i) maintain certain pre-petition bank accounts, (ii) honor certain pre-petition checks; and (iii) limit the list of creditors receiving notice of all filings.

D.      **Significant Events Occurring During the Chapter 11 Case**

Below is a summary of significant events that have occurred during the course of this Chapter 11 Case.

1.      **Asset Sales**

The Debtor has sold a number of assets to third-party purchasers.  On April 17-18, 2013, the Debtor sold nearly all of its equipment and rolling stock at a Ritchie Bros. Auction.  The net proceeds to the Debtor from this two day auction were $9,697,742.94. The Debtor has also used Mel Davis Auctions to liquidate over $750,000 in rolling stock and other personal property.

Additionally, the Debtor sold other real property and plants as a large transaction netting a total of $1,600,000.00.   The Debtor has also sold other items of personal property and real property as separate sale transactions.

2.      **Enforcement of Automatic Stay**

When the Debtor filed the Chapter 11 petition, its personal property was located throughout the southern and central parts of Texas on various job sites.   With the assistance of Frost, the Debtor located the personal property to be removed and delivered to Ritchie Bros. Auctions.  Some of the personal property was land on property pursuant to a lease with the land owner.   Many of these landowners refused to release the equipment to the Debtor or Frost on account of unpaid lease payments.

The Debtor filed motions to enforce the automatic stay, and with U.S. Marshal assistance, was able to recover this property of the estate to sell for the benefit of creditors.

3.      **Retention of the Debtor's Professionals**

The Debtor engaged various professionals to assist in the reorganization process. The Bankruptcy Court approved the employment of the following professionals to serve in their respective capacities:

- Langley & Banack, Inc., as the Debtor's bankruptcy counsel;

- Padgett, Stratemann & Co., LLP, as the Debtor's Accountant to file 2011 tax return;
- Mel Davis Auctions, to sell pickup trucks and trailers and various personal property;
- Nai Rio Grande Valley LLC, as real estate broker to sell Harlingen, Texas office;
- Gardner Law Firm, as the Debtor's special counsel;
- Allex International Properties, as real estate brokers;
- Hales Bradford, LLP, as accountants to file 2012 tax return; and
- Certain other professionals retained as necessary pursuant to separate applications.

### 4.      Appointment of Committee

On April 12, 2013, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**") (Docket No. 367).   On April 29, 2013, the United States Trustee amended the appointment notice.  The Committee has not retained counsel.

### E.      Related Entities

There are a number of other corporations or corporate entities that are related to the Debtor or are owned and/or controlled by officers of the Debtor.

#### a.      Val-Tex Asphalt & Recycling, Inc. ("Val-Tex")

Val-Tex is wholly owned by the Debtor (100% of stock).  Val-Tex owns six (6) asphalt plants throughout south Texas.  Joe C. Ballenger, Sr. is President of Val-Tex and Joe C. Ballenger, Jr. is Vice-President.  Val-Tex is currently negotiating the sale of assets to a third party.  The proceeds from the sale of Val-Tex assets will be paid to creditors holding valid, perfected liens with all remaining proceeds remitted to the Debtor which owns 100% of Val-Tex stock.

Frost, Zurich and Liberty have all filed UCC-1 filings with the Secretary of State against Val-Tex.  Upon information and belief, Val-Tex owes approximately $50,000 to Frost and owes a small amount of unsecured debt to other creditors.  Additionally, there are outstanding tax claims against the personal property.

#### b.      Tejas Concrete & Materials, Inc. ("Tejas")

Tejas is owned by Joe C. Ballenger, Sr. and Joe C. Ballenger, Jr.  Tejas currently owns trucks and a concrete plant in Russeltown, Texas.  Compass Bank and Zurich have filed UCC-1 statements filed against Tejas.

     c.      South Texas Trucking, Inc. ("STT")

The Debtor is the 100% owner of STT stock. Joe C. Ballenger, Sr. is the representative of STT. STT was originally organized to perform the transportation functions and services for the Debtor's construction business. STT owns a fleet of trucks; some trucks and trailers have been sold. To the best of the Debtor's knowledge, there are no liens against STT assets. Furthermore, there are no UCC creditor filings with the Texas Secretary of State.

     d.      Ballenger United Development, Ltd. ("BUDL")

To the best of the Debtor's knowledge, BUDL does not own any assets.

     e.      Ballenger Equipment Leasing, Inc. ("BEL")

The Debtor currently has no involvement with BEL. According to the Texas Secretary of State filings, a certificate of termination for this entity was filed on July 8, 2013.

     f.      Ballenger Leasing, Ltd. ("BL")

The Debtor currently has no involvement with BL. According to the Texas Secretary of State filings, a certificate of termination for this entity was filed on July 8, 2013.

     g.      Ballenger Valley Development, Inc. ("BVD")

BVD owns the stock of BUDL. To the best of the Debtor's knowledge, BVD does not own any other assets. BVD was organized originally for estate planning purposes, but is not actively used.

## V.     EXPLANATION OF CHAPTER 11

### A.     Overview of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Pursuant to chapter 11, the debtor-in-possession may attempt to reorganize its business for the benefit of the debtor, its creditors, and other parties-in-interest. However, chapter 11 may also be used as a means for liquidating the debtor's assets under a controlled process that maximizes the value of those assets in an attempt to recover the greatest possible value for the creditors and interest holders.

The commencement of a chapter 11 case creates an estate comprised of all the legal and equitable interests of the debtor in property as of the date the petition was filed. Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may

continue to operate its business and remain in possession of its property as a "debtor in possession" unless the bankruptcy court orders the appointment of a trustee.

The principal purpose of a chapter 11 case is to formulate a plan or reorganization (which could include liquidation). The plan of reorganization establishes the means for satisfying claims against and interests in the debtor.

**B.     Plan of Reorganization**

Although referred to as a plan of reorganization, a plan may provide for a restructuring of the debtor's business and obligations or the liquidation of the debtor's assets. In this case, the Debtor is transferring all of its remaining assets to a liquidating trust to be managed by a trustee for the benefit of holders of allowed claims.

In considering a plan, the bankruptcy court must independently determine that the requirements of section 1129 of the Bankruptcy Code have been met. Section 1129 requires, *inter alia*, that a plan meets the "best interest" and "feasibility" tests. The best interests test requires that the value of the consideration to be distributed to the holders of claims and equity interests under a plan may not be less than the value those parties would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code. For a plan to be deemed feasible, the bankruptcy court must find that there is a reasonable probability that the debtor will be able to meet its obligations under the plan and that the debtor will not require further financial reorganization.

The Debtor believes that the Plan satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code, including the best interests and feasibility tests. The Debtor may be required to modify or supplement the Plan substantially to include the appointment of the liquidating trustee and the trust agreement.

Classes of claims or equity interests that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan and thus are not entitled to vote. Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims or equity interests in an impaired class. A class is impaired if the legal, equitable or contractual rights attaching to the claims or equity interests of that class are modified under the plan.

**VI.     OVERVIEW OF THE PLAN**

**A.     General**

The Plan you are being asked to consider is attached hereto as Exhibit "A." You should carefully review the Plan prior to the Confirmation Hearing.

The Debtor believes that the Plan provides fair treatment to and is in the best interest of all classes of Claims and Interests. On the Effective Date (defined in the plan) of the Plan, the Debtor will transfer all estate assets to a trust to be managed by a third-

party neutral trustee.  The trustee will liquidate the estate assets in his business judgment and pay creditors holding allowed claims.  The estate assets will include litigation rights and causes of actions or claims.  The trustee shall at his discretion liquidate these claims in his business judgment for the benefit of holders of allowed claims.

The Debtor believes the Plan is feasible and meets the requirements of the Bankruptcy Code.  The information contained herein was prepared from information delivered by the Debtor's professionals and has been approved by the Debtor's representative.

This summary describes certain major elements of the Plan.  The remaining sections of the Plan deal with each of these subjects in greater detail.  The actual terms of the Plan are controlling, and this summary will not change and should not be used to construe terms of the Plan.

### B.      Classification and Treatment Summary

The following is a summary of the classification and treatment of Claims and Interests under the Plan.  Reference should be made to the entire Disclosure Statement and to the Plan for a complete description of the classification and treatment of Claims and Interests.

**THIS IS ONLY A SUMMARY OF CERTAIN KEY PROVISIONS OF THE PLAN.  THE PLAN INCLUDES OTHER PROVISIONS THAT MAY AFFECT YOUR RIGHTS.  YOU ARE URGED TO READ THE PLAN IN ITS ENTIRETY.**

### 1.      Administrative Claims and Priority Tax Claims

With respect to each Allowed Administrative Claim, except as otherwise provided for in Section 10.1 of the Plan, on, or as soon as reasonably practicable after, the latest of (i) the Effective Date, (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Administrative Claim becomes payable pursuant to any agreement between the Debtor and the holder of such Administrative Claim, the holder of each such Allowed Administrative Claim shall receive in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Claim, (A) Cash equal to the unpaid portion of such Allowed Administrative Claim or (B) such different treatment as to which the Debtor and such holder shall have agreed upon in writing; *provided, however,* that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

Each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Tax Claim as shall have been determined by the Debtor, (i) regular installments payable in Cash, over a period not exceeding five years after the Petition Date, having a total value, as of

the Effective Date, equal to the Allowed amount of such Claim; (ii) such different treatment as to which the Debtor and such holder have agreed in writing; *provided* that such treatment is on more favorable terms to the Debtor (or the Liquidating Trust after the Effective Date), than the treatment set forth in clause (i) above; or (iii) payment in full in Cash on the later of the Distribution Date or the date on which such Claim becomes an Allowed Claim.  Each holder of an Allowed Priority Tax Claim shall *not* receive any Cash or other distribution on account of a penalty on, with respect to or arising in connection with such Allowed Priority Tax Claims.  All penalties on, with respect to or arising in connection with any Priority Tax Claim shall be treated as Class 6 General Unsecured Claims.

The aggregate amount of Administrative Claims and Priority Tax Claims are unknown as of the filing of this Disclosure Statement.

### 2.    Professionals Fee Claims

All final requests for payment of Professional Fee Claims and any Substantial Contribution Claims must be filed and served on the Debtor, the Liquidating Trustee, their counsel, counsel to Frost, counsel to Liberty, counsel to Zurich, the Creditors Committee and other necessary parties in interest no later than sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to such requests for payment must be filed and served on the Debtor, the Liquidating Trustee, their counsel, counsel to Frost, counsel to Liberty, counsel to Zurich, the Creditors Committee and other necessary parties in interest as well as the requesting Professional or other Person no later than twenty-one (21) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable request for payment was served.

The Professional Fee claims of the following professionals are included within this category of claims: Langley & Banack, Inc., Padgett, Stratemann & Co., Mel Davis Auctions, Nai Rio Grande Valley LLC, Gardner Law Firm, Allex International Properties, and Hales Bradford, LLP.  All of the professionals listed with the exception of Langley & Banack, Inc. and Hales Bradford, LLP have been paid or will be paid through an agreed commission upon sale of certain assets.

The Debtor has earmarked money to pay Hales Bradford, LLP fees and expenses.  Langley & Banack, Inc. will be paid from the proceeds from the sale of unencumbered assets, namely the Debtor's office headquarters in Harlingen, Texas.  Allowed unpaid professional fees will also be paid from proceeds from the sale of assets of Debtor owned subsidiary companies to the extent proceeds remain after valid, secured, perfected liens against those assets are paid.

### 3.    Statutory Fees

All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid

on or before the Effective Date.  All such fees that arise after the Effective Date shall be paid by the Liquidating Trustee and shall remain the obligation of the Liquidating Trustee until the Chapter 11 Case is closed, dismissed or converted.

### 4.      Summary of Classified Claims and Interests

Unless otherwise noted, the Debtor's estimates of the number and amount of Claims or Interests in each class set forth in the table below includes all Claims or Interests asserted against the Debtor without regard to the validity or timeliness of the filing of the Claims or Interests.  Thus, by including any Claim in the estimates set forth below, the Debtor is not waiving his rights to object to any Claim or Interest on or before the objection deadline established by the Plan.

| Class | Treatment |
| --- | --- |
| **Class 1:  Other Priority Claims**<br><br>Voting:  Unimpaired – deemed to accept<br><br>Debtor's Estimate of Allowed Claims:  $0.00<br><br>Estimated Recovery:  100% | On, or as soon as reasonably practicable after, the latest of (i) the Distribution Date, (ii) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or (iii) the date on which such Allowed Other Priority Claim becomes payable pursuant to any agreement between the Debtor and the holder of such Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Other Priority Claim, either (A) Cash on the Effective Date equal to the unpaid portion of such Allowed Other Priority Claim or (B) such different treatment as to which the Debtor and such holder shall have agreed upon in writing; *provided* that such different treatment must be on more favorable terms to the Debtor or the Liquidating Trustee after the Effective Date, than the treatment set forth in clause (A) above. |
| **Class 2:  Frost Secured Claim**<br><br>Voting:  Impaired – entitled to vote<br><br>Debtor's Estimate of Allowed Claims:  $16,000,000.00<br><br>Estimated Recovery:  75% | Frost, as a holder of an Allowed Secured Claim will receive payments, less applicable taxes, closing costs and fees from the sale of Frost Collateral.  The Liquidating Trustee shall sell Liquidating Trust Assets, including the Frost Collateral.  Upon the sale of Frost Collateral, the Liquidating Trustee will remit the proceeds from the sale less Trustee commission, closing costs, applicable taxes, and fees to Frost.<br><br>Frost has received $12,266,104.40 to date.  Additionally, all pre-petition and post-petition ad valorem real property taxes have been paid in full to the various taxing jurisdictions.  As real property which constitutes Frost Collateral is sold by the Debtor and/or Liquidating Trustee, the proceeds, less closing costs and taxes will be remitted to Frost until its secured claim is paid in full. |
| **Class 3:  Zurich Secured Claim** | Zurich is a secured creditor by virtue of the |

| | |
|---|---|
| Voting:  Impaired – entitled to vote<br><br>Debtor's Estimate of Allowed Claims:  unknown<br><br>Estimated Recovery:  $0.00 | Agreement of Indemnity executed between the Debtor and Zurich on or about April 15, 2009.  The Debtor also entered into a supplemental Agreement with Zurich on or about October 9, 2012.  Under these two documents, the Debtor agreed to direct and instruct the owners of the projects bonded by Zurich to pay all contract proceeds on those projects directly to Zurich.  Therefore, Zurich is secured by the contracts for construction jobs on which it has provided a bond and the receivables from those contracts.<br><br>To the extent cash and receivables are collected from Zurich bonded jobs, Zurich will continue to collect both.  Zurich shall not receive any further distribution from the Debtor on account of its secured claim. |
| **Class 4:  Liberty Secured Claim**<br><br>Voting:  Impaired – entitled to vote<br><br>Debtor's Estimate of Allowed Claims:  unknown<br><br>Estimated Recovery:  0% | Liberty is a secured creditor by virtue of the General Agreement of Indemnity executed between the Debtor and Liberty on or about May 11, 2010.  The Debtor also entered into a Memorandum of Understanding on or about September 20, 2012.  Under these two documents, the Debtor agreed to direct and instruct the owners of the projects bonded by Liberty to pay all contract proceeds on those projects directly to Liberty.  Therefore, Liberty is secured by the contracts for construction jobs on which it has provided a bond and the receivables from those contracts.<br><br>To the extent cash and receivables are collected from Liberty bonded jobs, Liberty will continue to collect both.  Liberty shall not receive any further distribution from the Debtor on account of its secured claim. |
| **Class 5:  First Community Bank Secured Claim**<br><br>Voting:  Impaired – entitled to vote<br><br>Debtor's estimate of Allowed Claims:  $250,000.00<br><br>Estimated Recovery:  100% | FCB is secured by the BCC Headquarters described as a 14.52 acres land out of Block 23, Palmetal Subdivision, Cameron County, Texas, according to the map or plat thereof recorded in Volume 4, Page 2, Map Records of Cameron County, Texas and further described in the Deed of Trust recorded at Volumes 14427, Page 285 of the Official Public Records of Cameron County (the "BBC Headquarters").<br><br>At this time, the BCC Headquarters has substantial equity and Ziehe is currently marketing the property to be sold.    FCB's claim related to BCC Headquarters is allowed and fully secured.   The Debtor and/or Liquidating Trustee will pay the secured claim of FCB through the proceeds of the sale of the BCC Headquarters in the manner set forth in this paragraph.<br><br>The Debtor shall: |

A.   List and maintain an active listing with Eric Ziehe of Rioco Realtors as approved by the Bankruptcy Court and continuously market the property until sold.   In the event the Debtor and/or Liquidating Trustee determine to change the active listing with the Realtor, they will notify FCB ten (10) days in advance of the execution of a new Listing Agreement and FCB shall be given an opportunity to object to the change in the listing agent and be heard by this court prior to any change.    Any written offer to purchase the property shall be forwarded to the Movant within three (3) business days of receipt by the listing broker.   The Debtor and/or Liquidating Trustee's intent to either accept or reject an offer for the purchase of the property will be communicated ten (10) days in advance of the Debtor and/or Liquidating Trustee's actual or effective acceptance or rejection of the offer and FCB shall have an opportunity to object to the proposed acceptance or rejection of the offer and be heard by this court prior to any such acceptance or rejection.

B.   Maintain insurance on the property and provide continuance proof of insurance to FCB.

C.   Continue to pay all property taxes due on the property and provide proof of payment to FCB.

D.   Maintain the utility service to the property and allow periodic inspections by FCB upon reasonable notice to the Debtor and/or Liquidating Trustee.

If the Debtor fails to comply with sub-paragraph A,B,C and D above, FCB must give the Debtor/and Liquidation Trustee and Debtor/Liquidating counsel written notice by regular and certified mail.    If the Debtor/Liquidating Trustee fails to comply within fourteen (14) days of the date that notice was sent, it is a Final Default under this Plan.  FCB is only required to send two notices of default under this Order.  If there is a third failure to comply with sub-paragraph A, B, C and D it is a Final Default and no further notice of an opportunity to cure must be given and FCB may foreclose its collateral.

| | |
|---|---|
| | FCB's allowed secured claim is in the amount of $307,726.04 as of November 15, 2012 with interest continuing to accrue beginning November 16, 2012 at the rate of 7.9% per annum, plus FCB's reasonable attorney's fees.  Notwithstanding, §5.5 of this Plan regarding "Cancellation of Old Securities and Agreements," the terms of the Real Estate Lien Note dated October 15, 2007 in the original principal amount of $2,200,000.00 as secured by the Deed of Trust described above shall continue in full force and effect as if renewed and extended for the amount of time necessary to consummate this portion of the Plan until the sale of the BCC Headquarters.   FCB shall be paid at closing and FCB shall deliver a Release of Lien of the Deed of the Trust on the BCC Headquarters.<br><br>In the event the BCC Headquarters has not been sold on or before three hundred sixty-five (365) days after the effective date, FCB shall be permitted to petition this court for a change in broker or other methods related to the sale of the property or to foreclose its interest in the real property. |
| **Class 6: General Unsecured Claims, Deficiency Claims**<br><br>Voting: Impaired – entitled to vote<br><br>Debtor's     Estimate     of     Allowed     Claims: $24,470,531.90<br><br>Estimated Recovery:  0% | The Class 6 claims consist of the general unsecured creditor claims listed on Schedule "F" of the Debtor's Schedules.    Additionally, the Class 6 claims include the unsecured deficiency claims of all secured creditors  including Frost,  Zurich, Liberty, Komatsu, and Wells Fargo.<br><br>The Class 6 claims will be paid with the proceeds from the sale of unencumbered assets.  These assets include  the  equity  from  the  sale  of  the  BCC Headquarters and the proceeds from the collection of any Avoidance Actions and/or Litigation Rights.<br><br>On or as soon as reasonably practicable after the Effective Date, each holder of an Allowed General Unsecured Claim will receive, in full satisfaction, settlement of and in exchange for such Allowed Claim, its Pro Rata Share of the proceeds from the sale of unencumbered assets and/or collection from the  prosecution  of  Avoidance  Actions  and/or Litigation Rights. |
| **Class 7:  Subordinated Claims**<br><br>Voting:  Impaired – deemed to reject<br><br>Debtor's Estimate of Allowed Claims:  unknown<br><br>Estimated Recovery:  0% | Under  the  Plan,  Subordinated  Claims  will  not receive or retain any property on account of such Claims.      All  Subordinated  Claims  will  be discharged as of the Effective Date. |
| **Class 8:  BCC Interests**<br><br>Voting:  Impaired – deemed to reject | Under the Plan, all BCC Interests of any kind shall be cancelled as of the Effective Date and the holders thereof  shall  not  receive  or  retain  any  property |

| | under the Plan on account of such Interests. |
| Estimated Recovery: 0% | |

### C.    Executory Contracts and Unexpired Leases

On the Effective Date, and to the extent permitted by applicable law, all of the Debtor's executory contracts and unexpired leases, will be rejected by the Debtor or Liquidating Trustee unless such executory contract or unexpired lease:  (a) is being assumed pursuant to the Plan or is identified in the Plan Supplement as an Assumed Contract; (b) is the subject of a motion to assume filed on or before the Confirmation Hearing; or (c) has been previously rejected or assumed.  Each contract and lease that is assumed shall include (i) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other documents that in any manner affects such contract or lease and (ii) all contracts or leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

Except as otherwise provided in the Plan or by Final Order of the Bankruptcy Court, all (i) Allowed Claims arising from the assumption of any contract or lease shall be treated as Administrative Claims pursuant to Section 3.1(a) of the Plan; and (ii) Allowed Rejection Damages Claims shall be treated as General Unsecured Claims pursuant to and in accordance with the terms of Section 3.3(b) of the Plan.  If the rejection by the Debtor, pursuant to the Plan or otherwise, of a contract or lease results in a Rejection Damages Claim, then such Rejection Damages Claim shall be forever barred and shall not be enforceable against the Debtor or the Liquidating Trustee or the properties of any of them unless a Proof of Claim is filed and served upon counsel to the Debtor on or prior to the later of (i) thirty (30) days after entry of the order authorizing the rejection of such contract or lease and (ii) fifteen (15) days after the date designated as the rejection date in the order authorizing the rejection of such contract or lease.  The Debtor and Liquidating Trustee reserve the right to object to any Rejection Damages Claim.

Indemnification Obligations owed to those of the Debtor's directors, officers and employees who had served prior to, on or after the Petition Date, but who are not serving on the Effective Date shall be deemed to be, and shall be treated as though they are, contracts that are rejected pursuant to section 365 of the Bankruptcy Code under the Plan pursuant to the Confirmation Order.  Any Claims resulting from such rejection shall constitute Subordinated Claims and shall be treated in accordance with Section 3.4(a) of the Plan.

### D.    Outline of Liquidating Trustee

On the Effective Date, all remaining assets of the estate will be transferred to the Liquidating Trust.  The Liquidating Trust will be disclosed in a Plan Supplement which

will include the name of the Liquidating Trustee and the trust agreement. The Debtor shall file the Plan Supplement with the Clerk of the Bankruptcy Court at least ten (10) days prior to the Voting Deadline. The Debtor reserves the right to alter, amend or modify the Plan Supplement at any time prior to the Effective Date.

The Debtor and United States Trustee will choose the Liquidating Trustee. A Liquidating Trustee oversight committee shall be appointed. This oversight committee will consist of one representative from the following creditors: Frost, Zuirch and Liberty. The beneficiaries of the Liquidating Trust shall be all creditors holding Allowed Claims. These include the claims of Frost, Zurich, Liberty, First Community Bank, all unsecured creditors, allowed administrative expense claim holders (to the extent any remain).

### E.  Disputed Claims

Except as otherwise explicitly provided in the Plan, including without limitation, Article 10 of the Plan, nothing shall affect the Debtor's or the Liquidating Trustee's rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment. A Disputed Claim means: (i) if a Proof of Claim bar date for such Claim has been established pursuant to a Final Order, (a) Claims as to which a Proof of Claim is not timely filed, (b) a Filed Claim as to which the time period set for the Debtor or Liquidating Trustee to file an objection to such Claim has not expired, or (c) a Filed Claim as to which the Debtor or the Liquidating Trustee has timely filed an objection but the Claim has not been settled by the Debtor or Liquidating Trustee or determined, resolved, or adjudicated by Final Order; (ii) if a Proof of Claim bar date has not been established for such Claim, a Claims as to which (a) the Debtor's liability in any manner that would have been available to it had the Chapter 11 Case not been commenced, and (b) the liability of the Debtor has not been settled or determined, resolved or adjudicated by final, non-appealable order of a court or other tribunal of competent jurisdiction; (iii) a Claim that has been expressly disputed in the Plan; or (iv) a Claim that has been permitted to be adjudicated by the Bankruptcy Court and has not been allowed by a Final Order. No distributions shall be made on Disputed Claims until and unless such Disputed Claim becomes an Allowed Claim.

### F.  Means of Implementing the Plan

The source(s) of funding necessary for the treatment of Claims and Interest as set forth in the Plan will be the liquidation of estate assets through the Liquidating Trust by a Liquidating Trustee. The Liquidating Trustee shall liquidate the remaining estate assets for the benefit of holders of allowed claims.

On the Effective Date, the Debtor will transfer all Estate Assets to a Liquidating Trust to be administered. The Liquidating Trust Assets will include all Litigation Rights and Avoidance Actions. The Liquidating Trustee, to be named through the Plan Supplement, will be a non-insider of the Debtor. The Trust shall be governed by the laws of Texas and the Liquidating Trust Agreement to be included in the Plan Supplement.

**G.      Services by and Fees for Professionals**

The Liquidating Trustee will be responsible for the payment of fees and expenses incurred by the Debtor's professionals, the trust's Professionals, if any, following the Effective Date without the necessity of Bankruptcy Court approval.

**H.      Preserved Litigation Claims**

In accordance with Fifth Circuit case law, the Debtor is required to preserve all litigation claims by specifically and unequivocally identifying all claims and causes of action.  The Debtor preserves the following claims and causes of action which will be transferred to the Liquidating Trust (subject to amendment), unless otherwise provided for:

(a)      Claims against Fordyce Holdings, Inc. related to misrepresentations made in aggregate sale transactions.  Fordyce misrepresented the weight of the aggregate in order to inflate the price when the actual weight of the aggregate the Debtor purchased was lower than the amount of the price.

(b)      Claims against Liberty Mutual Insurance Company for receipt preference payments and receipt of indirect preference payments under 11 U.S.C. § 574.  Claims against Liberty Mutual Insurance Company for breach of the indemnity agreements, for bad faith in exercising its rights under the agreements, for economic duress, for promissory estoppel, for negligent misrepresentation, for breach of fiduciary duty and for intentional interference with contractual relations.

(c)      Claims against Fidelity & Deposit Company of Maryland & Colonial American Casualty & Surety Company for receipt of preference payments and receipt of indirect preference payments under 11 U.S.C. § 547. Claims against Fidelity & Deposit Company of Maryland & Colonial American Casualty & Surety Company for breach of the indemnity agreements, for bad faith in exercising its rights under the agreements, for economic duress, for promissory estoppels, for negligent misrepresentation, for breach of fiduciary duty, and for intentional interference with contractual relations.

(d)      Claims against those entities listed in response to Statement of Financial Affairs question (3b) under 11 U.S.C. §§ 547 and 548.

(e)      The claims, causes of action and litigation that are listed in response to Statement of Financial Affairs question 4.

(f)     The claims and causes of action against insurance for the recovery of the 2011 Chevy Pickup, Unit 67518, VIN # 3GCPCPEA3BG3BG369613, which were listed in response to Statement of Financial Affairs question 8.

(g)     Claims and causes of action against the Association of General Contractors for failure to remit pre-paid dues paid by the Debtor prior to the Petition Date.

(h)     The claims and causes of action against the Texas Department of Transportation relating the jobs and impact claim log attached as an Exhibit in response to Schedule B question 21 of the Debtor's Schedules.

(i)     The claims and causes of action against IBTX-San Antonio for negligent misrepresentation, negligence, intentional inference with contractual relations and promissory estoppel.

**I.      Office of the United States Trustee**

The Liquidating Trustee shall provide the United States Trustee with financial reports on a quarterly basis in the form of affidavits of disbursements and pay all required fees until such time as a final decree is entered in this Chapter 11 Case.

**J.      Effective Date Conditions**

The following conditions precedent must be satisfied or waived on or prior to the Effective Date in accordance with Section 8.3 of the Plan:

(a)     The Confirmation Order shall have been entered in form and substance reasonably satisfactory to the Debtor and the Liquidating Trustee and shall, among other things:

(i)      provide that the Debtor and the Liquidating Trustee are authorized and directed to take all actions necessary or appropriate to consummate the Plan, including without limitation, to enter into, implement, and perform under the contracts, instruments, and other agreements or documents created in connection with the Plan;

(ii)     provide that, notwithstanding Rule 3020(e) of the Bankruptcy Rules, the Confirmation Order shall be immediately effective, subject to the terms and conditions of the Plan;

(b)     The Confirmation Order shall not then be stayed, vacated or reversed;

(c)     All material authorizations, consents, and regulatory approvals required, if any, in connection with consummation of the Plan shall have been obtained; and

(d)     All material actions, documents, and agreements necessary to implement the Plan shall have been effected or executed.

Upon the occurrence of the Effective Date, the Debtor or the Liquidating Trustee, whichever is applicable, shall file and serve a Notice of Effective Date and the Claims Bar Date in the Case.

### K.     Retention of Jurisdiction

Until this Chapter 11 case is closed, the Bankruptcy Court will retain the jurisdiction as is legally permissible under applicable law to ensure that the purpose and intent of the Plan are carried out and to hear and determine all Claims, Interests and objections thereto that could have been brought before the entry of the Confirmation Order.  The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against and Interests in the Debtor and to enforce all causes of action that may exist on behalf of the Debtor, over which the Bankruptcy Court otherwise has jurisdiction.

### L.     Modification or Withdrawal of the Plan

The Debtor reserves the right to modify the Plan either before or after Confirmation to the fullest extent permitted under section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, including but not limited to modifications necessary to negotiate the resolution of an objection to the Confirmation of the Plan.  The Debtor may withdraw the Plan at any time before the Confirmation Date, or thereafter prior to the Effective Date.  The Plan may be amended by the Debtor before or after the Effective Date as provided in section 1127 of the Bankruptcy Code.

## VII.     CONFIRMATION OF THE PLAN

### A.     Solicitation of Votes; Voting Procedures

As set forth in Article 2 of the Plan, the following classes will be entitled to vote on the Plan:  Class 2 (Frost Secured Claims), Class 3 (Zurich Secured Claim), Class 4 (Liberty Secured Claim), Class 5 (FCB Secured Claims); and Class 6 (General Unsecured Claims, Deficiency Claims.  All other Classes are either unimpaired or deemed to reject the Plan and, in either case, are not entitled to vote.

The Debtor will propose certain solicitation and voting procedures pursuant to a separate motion to be filed with the Court. Such motion and proposed procedures will provide (i) the notice of, among other things, the time for submitting ballots to accept or reject the Plan, the date, time, and place of the hearing to consider Confirmation of the Plan and related matters, and the time for filing objections to Confirmation of the Plan, and, as applicable, (ii) a ballot or ballots (and return envelope(s)) that may be used in voting to accept or to reject the Plan, or a notice of nonvoting status (the "**Solicitation Package**"). Only holders eligible to vote in favor of or against the Plan will receive ballots as part of their Solicitation Package.

### B.   Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

1. The plan complies with the applicable provisions of the Bankruptcy Code.

2. The proponents of the plan complied with the applicable provisions of the Bankruptcy Code.

3. The plan has been proposed in good faith and not by any means forbidden by law.

4. Any payment made or promised by the debtor for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by or is subject to the approval of the Bankruptcy Court as reasonable.

5. With respect to post-confirmation management,

(a)

(i) The proponents of the plan have disclosed the identity and affiliations of any individual proposed to serve after confirmation of the plan as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

(ii) the appointment to or continuance in such office of such individual is consistent with the interests of creditors and equity security holders and with public policy; and

       (b)     the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the debtor and the nature of any compensation for such insider.

6.     Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

7.     With respect to each impaired class of claims or interests:

       (a)     each holder of a claim or interest of such class has accepted the plan or will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor was liquidated on such date under chapter 7 of the Bankruptcy Code on such date; or

       (b)     if section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

8.     With respect to each class of claims or interests:

       (a)     such class has accepted the plan; or

       (b)     such class is not impaired under the plan.

9.     Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that:

       (a)     with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of the Bankruptcy Code, on the Effective Date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

       (b)     with respect to a class of claims of a kind specified in sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7), of the Bankruptcy Code, each holder of a claim of such class will receive:

(i)     if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii)    if such class has not accepted the plan, cash on the effective date of the plan, equal to the allowed amount of such claim; and

(c)    with respect to a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, the holder of claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

10.    If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

11.    Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

12.    All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payments of all such fees on the effective date of the plan.

13.    All transfers of property under the plan shall be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation.

The Debtor believes that the Plan satisfies all of the statutory requirements of chapter 11 of the Bankruptcy Code, that the Debtor has complied with all the requirements of chapter 11, and that the Plan is proposed in good faith.

The Debtor believes that Holders of all Allowed Claims and Interests will receive payments under the Plan having a present value as of the Effective Date not less than the amounts likely to be received if the Debtor was liquidated in a case under Chapter 7 of the Bankruptcy Code.

The Debtor also believes that the feasibility requirement for confirmation of the Plan will be satisfied by the transfer of the Estate assets to the Liquidating Trust and the terms of the Liquidating Trust Agreement. These facts and others in support of confirmation of the Plan will be provided at the Confirmation Hearing.

## VIII.   RISK FACTORS

### A.      Confirmation Risks

Any objection to confirmation of the Plan filed by a party in interest might prevent confirmation of the Plan or delay confirmation for a significant period of time.

### B.      Conditions Precedent

The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived in accordance with Section 8.3 of the Plan:

> (a)     an order finding that this Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered; and
>
> (b)     the proposed Confirmation Order shall be in form and substance reasonably satisfactory to the Debtor.

Each of the conditions set forth in Sections 8.1 (Conditions to Confirmation) and 8.2 (Conditions to Effective Date) of the Plan, with the express exception of the conditions contained in Section 8.1(a) and Sections 8.2(a)(i), (ii), (iii) and (b), may be waived in whole or in part by the Debtor without any notice to parties in interest or the Bankruptcy Court and without a hearing.

## IX.   LIQUIDATION   ALTERNATIVE   TO   CONFIRMATION   AND CONSUMMATION OF THE PLAN

The Debtor analyzed whether a Chapter 7 liquidation of the Debtor's assets would be in the best interest of Holders of Claims and Interests.  While the Debtor has not obtained a recent appraisal of all of the Debtor's assets, all indications of the value of the Debtor's assets, including the real and personal property, indicate that the debt secured by such assets exceeds the aggregate value if such assets were liquidated.  For this reason, the Debtor anticipates that a liquidation of its assets through a Chapter 7 bankruptcy case would produce a nominal return, or no return at all, for holders of General Unsecured Claims, Chapter 11 Administrative Claims and Interests in the Debtor.  Thus, the Debtor believes that the consummation of the proposed Plan is in the best interests of the creditors, as it produces a better return for such creditors than a Chapter 7 liquidation.

## X.      RECOMMENDATION AND CONCLUSION

The Debtor urges all Holder of Claims and Interests to support approval of this Disclosure Statement and confirmation of the Plan.

## XI.    EXHIBITS

Exhibit "A" -- Chapter 11 Liquidating Plan for Ballenger Construction Company
Exhibit "B" – List of Personal Property (Schedule B)
Exhibit "C" – List of Executory Contracts
Exhibit "D" – List of Potential Preferential Payments
Exhibit "E" – List of Debtor's Real Property (Schedule A)
Exhibit "F" – Liquidation Analysis

Dated this 7 th day of August 2013.

Joe C. Ballenger, Sr.
Chief Executive Officer,
Ballenger Construction Company

**LANGLEY & BANACK, INC.**
745 E. Mulberry, Suite 900
San Antonio, Texas 78212
(210) 736-6600 Telephone
(210) 735-6889 Telecopier

*/s/ Allen M. DeBard*
DAVID S. GRAGG
State Bar No. 08253300
R. GLEN AYERS
State Bar No. 01467500
ALLEN M. DeBARD
State Bar No. 24065132

**ATTORNEYS FOR BALLENGER
CONSTRUCTION COMPANY**