# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CHAPTER 11 CASE** |
| **BALLENGER CONSTRUCTION** | § | |
| **COMPANY,** | § | **CASE NO. 12-20645-RSS** |
| | § | |
| Debtor. | § | |

**FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR
BALLENGER CONSTRUCTION COMPANY**

**LANGLEY & BANACK, INC.**
745 E. Mulberry, Suite 900
San Antonio, Texas 78212
(210) 736-6600 Telephone
(210) 735-6889 Telecopier

DAVID S. GRAGG
State Bar No. 08253300
R. GLEN AYERS
State Bar No. 01467500
ALLEN M. DeBARD
State Bar No. 24065132

**COUNSEL TO BALLENGER
CONSTRUCTION COMPANY**

# TABLE OF CONTENTS

1.    RULES OF CONSTRUCTION AND DEFINITIONS

1.1    Rules of Construction
1.2    Definitions

2.    CLASSIFICATION OF CLAIMS AND RELEVANT DEADLINES

2.1    Introduction
2.2    Unclassified Claims
2.3    Classification of Claims and Interests

3.    TREATMENT OF CLAIMS AND INTERESTS

3.1    Unclassified Claims
3.2    Unimpaired Classes of Claims and Interests
3.3    Impaired Voting Classes of Claims
3.4    Impaired Nonvoting Classes of Claims
3.5    Reservation of Rights Regarding Claims
3.6    Impairment Controversies

4.    ACCEPTANCE OR REJECTION OF THE PLAN

4.1    Impaired Classes and Interests Entitled to Vote
4.2    Acceptance by an Impaired Class
4.3    Presumed Acceptances by Unimpaired Classes
4.4    Classes Deemed to Reject Plan
4.5    Confirmation Pursuant to section 1129(b) of the Bankruptcy Code

5.    MEANS FOR IMPLEMENTING
       THE PLAN

5.1    Means of Implementation Subject to an Alternative Transaction
5.2    Summary of the Reorganization of the Debtor
5.3    Continued Corporate Existence
5.4    Certificate of Incorporation and By-laws
5.5    New Term Loan Agreement
5.6    Cancellation of Old Securities and Agreements
5.7    Authorization and Issuance of the New Common Stock; New Term Loans
5.8    Directors and Officers of Reorganized Debtor
5.9    Revesting of Assets
5.10   Restructuring Transactions
5.11   Indemnification of Reorganized Debtor's Directors, Officers, and
        Employees
5.12   Preservation of Rights of Action

5.13    Exemption from Certain Transfer Taxes
5.14    Corporate Action
5.15    Plan Supplement

6.    TREATMENT OF CONTRACTS AND LEASES

6.1    Assumed Contracts and Leases
6.2    Payments Related to Assumption of Contracts and Leases
6.3    Rejected Contracts and Leases
6.4    Compensation and Benefit Programs
6.5    Certain Indemnification Obligations
6.6    Extension of Time to Assume or Reject
6.7    Claims Arising from Assumption or Rejection

7.    PROVISIONS GOVERNING DISTRIBUTIONS

7.1    Distribution of Claims Allowed as of Effective Date
7.2    Distribution to Holders of Allowed Claims
7.3    Calculation of Distribution Amounts of New Common Stock
7.4    Application of Distribution Record Date
7.5    Withholding and Reporting Requirements
7.6    Setoffs
7.7    Allocations and Distributions

8.    CONDITIONS PRECEDENT TO CONFIRMATION AND
       CONSUMMATION OF THE PLAN

8.1    Conditions to Confirmations
8.2    Conditions to Effective Date
8.3    Waiver of Conditions

9.    RETENTION OF JURISDICTION

9.1    Scope of Retention of Jurisdiction
9.2    Failure of the Bankruptcy Court to Exercise Jurisdiction

10.    MISCELLANEOUS PROVISIONS

10.1    Professional Fee Claims and Substantial Contribution Claims
10.2    Dissolution of Creditors Committee
10.3    Payment of Statutory Fees
10.4    Successors and Assigns and Binding Effect
10.5    Compromises and Settlements
10.6    Releases and Satisfaction of Subordination Rights
10.7    Releases by Debtor
10.8    Discharge of the Debtor; Other Releases

10.9    Injunction
10.10  Exculpation and Limitation of Liability
10.11  Term of Injunction or Stays
10.12  Modifications and Amendments
10.13  Severability of Plan Provisions
10.14  Revocation, Withdrawal, or Non-Consummation
10.15  Notices
10.16  Computation of Time

## INTRODUCTION

Ballenger Construction Company, the Debtor and Debtor-in-Possession in the above-captioned case (the "**Debtor**") hereby proposes this Plan of Reorganization (as amended, modified or supplemented from time to time, the "**Plan**") on behalf of the Debtor for the resolution of the Debtor's outstanding claims and interests. Reference is made to the Disclosure Statement Regarding the Debtor's Chapter 11 Plan of Reorganization that the Debtor distributed contemporaneously herewith (as amended, modified or supplemented from time to time, the "**Disclosure Statement**") for a discussion of the Debtor's history, business, assets, results of operations, projections for future operations and risk factors, and a summary and analysis of the Plan and certain related matters, including distributions to be made under the Plan. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code (as defined in Section 1.2 of the Plan).

All holders of claims who are entitled to vote on the Plan are encouraged to read each of the Plan and the Disclosure Statement in its entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements as set forth in section 1127 of the Bankruptcy Code, Rule 3019 of the Bankruptcy Rules (as defined in Section 1.2 of the Plan) and Article 10 of the Plan, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation.

## 1.     RULES OF CONSTRUCTION AND DEFINITIONS

### 1.1     *Rules of Construction*

(a)     For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms used in the Plan and not otherwise defined in the Plan shall have the meanings ascribed to them in Section 1.2 of the Plan. Any capitalized term used in the Plan that is not defined in the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

(b) Whenever the context requires, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and vice versa.

(c) Any reference in the Plan to (i) a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and (ii) an existing document, exhibit, or other agreement means such document, exhibit or other agreement as it may be amended, modified or supplemented from time to time.

(d) Unless otherwise specified, all references in the Plan to sections, articles, schedules and exhibits are reference to section, articles, schedules and exhibits of or to the Plan.

(e) The words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan.

(f) Captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.

(g) The rules of construction as set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

1.2     *Definitions*

**"Administrative Bar Date"** shall mean the Business Day which is sixty (60) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

**"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in sections 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, (i) the actual, necessary costs and expenses incurred after the Petition Date for preserving the Estate and operating the business of the Debtor, including, without limitation, wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case, (ii) Professional Fee Claims, (iii) Substantial Contribution Claims, (iv) all fees and charges assessed against the Estates under section 1930 of Title 28 of the United States Code, (v) and Cure payments for contracts and leases that are assumed under section 365 of the Bankruptcy Code.

**"Allex"** means Allex International Properties and agent David Allex which have been retained by the estate and granted an exclusive listing agreement to sell certain pieces of real property constituting property of the estate.

**"Allowed"** means a Claim (i) that is a Filed Claim and as to which either (a) no objection to its allowance has been timely filed, or (b) any objection to its allowance has been settled or withdrawn by the Debtor or such objection has been denied by a Final Order; (ii) that is not listed in the Schedules as Disputed by the Debtor; (iii) that has been listed in the Schedules as Disputed by the Debtor, but has been settled, determined, resolved or adjudicated, as the case may be, in the procedural manner in which such Claim would have been settled, determined, resolved or adjudicated if the Chapter 11 Case had not been commenced; (iv) that has been expressly allowed in the Plan; or (v) that has been adjudicated before the Bankruptcy Court and is allowed by a Final Order; *provided, however,* that except as set forth in Section 10.7, 10.8 and/or 10.10 of this Plan, all Allowed Claims shall remain subject to all limitations set forth in the Bankruptcy Code, including, in particular, Sections 502 and 510.

**"Allowed Rejection Damages Claim Amount"** means an amount no greater than the amount calculated in accordance with section 502(b)(6) of the Bankruptcy Code.

**"Avoidance Actions"** means mean any and all rights, claims and causes of action which a trustee, Debtor in Possession, or other appropriate party in interest (including the Debtor and the Liquidating Trustee) would be able to assert on behalf of the Estate under applicable state statutes or the avoidance provisions of Chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code Sections 506, 542 through 551, and 553.

**"Ballenger Construction Company"** or **"BCC"** means Ballenger Construction Company, a Texas corporation.

**"BCC Headquarters"** means that certain tract of real property and all improvements located at 24200 N FM 509, Harlingen, Texas 78550 consisting of approximately 14.52 acres where the corporate offices are located.

**"Bankruptcy Code"** means sections 101 *et seq.*, of title 11 of the United States Code, as now in effect or hereafter amended.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of Texas or such other court as may have jurisdiction over the Chapter 11 Case or any aspect thereof.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

**"Bar Date"** means the last day for holders of Claims to file Claims against the Debtor with the Bankruptcy Court, which date is May 6, 2013 for the filing of general Proofs of Claim and June 5, 2013 for the filing of governmental Proofs of Claim.

**"BCC Interests"** means, collectively, all equity interests in Debtor outstanding prior to the Effective Date, including, without limitation, any preferred stock, stock options or other rights to purchase the stock of Debtor, together with any warrants, conversion rights, rights of first refusal, subscriptions, commitments, agreements, or other rights to acquire or receive any stock or other equity ownership interests in Debtor prior to the Effective Date.

**"Bond Claims"** means those secured/unsecured Claims against the Debtor arising under Chapter 2253 of the Texas Government Code and construction project payment bond agreements.

**"Business Day"** means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Rule 9006(a) of the Bankruptcy Rules), on which commercial banks are open for business in New York, New York and San Antonio, Texas.

"**Cash**" means legal tender of the United States or equivalents thereof.

"**Chapter 11 Case**" means Case No. 12-20645-rss, the Debtor's case under Chapter 11 of the Bankruptcy Code, pending the Bankruptcy Court.

"**Claim**" means (i) the right to payment against the Debtor or its Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or (ii) the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"**Class**" means a category of holders of Claims or Interests, as described in Article II of the Plan.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Colonial**" means Colonial American Casualty and Surety Company.

"**Confirmation**" means confirmation of the Plan by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code.

"**Confirmation Date**" means the date of entry by the clerk of the Bankruptcy Court of the Confirmation Order.

"**Confirmation Hearing**" means the hearing to consider Confirmation of the Plan under Section 1128 of the Bankruptcy Code.

"**Confirmation Order**" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"**Consummation of Plan**" means accomplishment of substantially all things contained or provided for in the Plan.

"**Contested Claim**" means any Claim as to which the Debtor or other party-in-interest including the Liquidating Trustee has interposed an objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or determined by a Final Order as of the Confirmation Date

"**Creditor**" means any Person who holds a Claim against the Debtor.

"**Creditors Committee**" means the official committee of unsecured creditors appointed pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Case on or about April 12, 2013, as reconstituted from time to time.

**"Cure"** means, with respect to the assumption of an executory contract or unexpired lease pursuant to section 365(b) of the Bankruptcy Code, (i) the distribution of Cash, or the distribution of such other property as may be agreed upon by the parties thereto or ordered by the Bankruptcy Court, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by such parties under such contract or lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law, or (ii) the taking of such other actions as may be agreed upon by such parties or ordered by the Bankruptcy Court.

**"Cure Claim"** means an amount necessary to Cure any default or unpaid monetary obligations under an executory contract or unexpired lease.

**"Debtor"** has the meaning set forth in the introductory paragraph of the Plan, and includes such entity in its capacity as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code, to the extent applicable.

**"Disallowed Claim"** means a Claim, or any portion thereof, that (a) has been disallowed by a Non-Appealable Order, (b) is Scheduled at zero of as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment has been Filed or deemed timely Filed by the applicable Bar Date, or (c) is not Scheduled and as to which no Proof of Claim or request for payment has been Filed or deemed timely Filed by the applicable Bar Date.

**"Disbursing Agent"** means the Liquidating Trustee

**"Disclosure Statement"** has the meaning set forth in the introductory paragraph of the Plan, as subsequently may be amended, supplemented, or modified from time to time, and that is prepared, approved and distributed in accordance with section 1125 of the Bankruptcy Code and Rule 3018 of the Bankruptcy Rules.

**"Disputed"** means, with respect to a Claim, (i) if a Proof of Claim bar date for such Claim has been established pursuant to a Final Order, (a) a Claim as to which a Proof of Claim is not timely filed, (b) a Filed Claim as to which the time period set for the Debtor to file an objection to such Claim has not expired, or (c) a Filed Claim as which the Debtor has timely field an objection but the Claim has not been settled by the Debtor or determined, resolved or adjudicated by Final Order; (ii) if a Proof of Claim bar date has not been established for such Claim, a Claim as to which (a) the Debtor disputes the Estate's liability in any manner that would have been available had the Chapter 11 Case not been commenced, and (b) the liability of the Estate has not been settled by the Debtor or determined, resolved, or adjudicated by a Final, Order; (iii) that has been expressly disputed in the Plan; or (iv) that has been permitted to be adjudicated before the Bankruptcy Court and has not been allowed by a Final Order.

**"Distribution Date"** means, (i) for any Claim that is an Allowed Claim on the Effective Date, (a) for any portion that was due prior to the Effective Date on or as soon as practicable after the Effective Date but not later than the first Business Day that is

20 days after the Effective Date or (b) for any portion that is due after the Effective Date, at such time as such portion becomes due in the ordinary course of business and/or in accordance with its terms; (ii) for any Claim that is not an Allowed claim on the Effective Date, the later of (a) the date on which the Disbursing Agent becomes legally obligated to pay such Claim; and (b) the date on which the Claim becomes an Allowed Claim; *provided, however,* that a later date may be established by order of the Bankruptcy Court upon motion by the Trustee or any other party.

**"Distribution Record Date"** means the record date for determining entitlement to receive distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date.

**"Effective Date"** means the Business Day upon which all conditions to the consummation of the Plan as set forth in Section 8.2 of the Plan have been satisfied or waived as provided in Section 8.3 of the Plan, and is the date on which the Plan becomes effective.

**"Employee Programs"** means all of the Debtor's employee benefit programs, plans, policies and agreements, including, without limitation, (i) all employee welfare benefit plans within the meaning of Section 3(1) of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), (ii) all employee pension benefit plans within the meaning of Section 3(2) of ERISA, (iii) all employment, bonus, retention, long and short-term incentive, executive transition and other severance, compensation, and other similar agreements, and (iv) all other employee compensation, benefit, and reimbursement programs, plans, policies, and agreements, but excluding any equity incentive plans, equity ownership plans, or any equity-based plans of any kind of the Debtor.

**"ERISA"** means the Employee Retirement Income Security Act of 1974, as amended.

**"Estate"** means the estate of the Debtor in the Chapter 11 Case created pursuant to Section 541 of the Bankruptcy Code.

**"Exchange Act"** means the Securities and Exchange Act of 1934, as amended.

**"Executory Contract"** shall mean any contract or agreement between the Debtor and any Person or entity pursuant to which a duty of performance remains on one or both sides.

**"FCB"** means First Community Bank.

**"F&D"** means Fidelity and Deposit Company of Maryland.

"**Filed Claim**" means a Claim for which a Proof of Claim has been (i) timely filed with the Court prior to the Bar Date, or (ii) filed with the Court after the Bar Date but deemed to have been filed prior to the Bar Date pursuant to a Final Order of the Bankruptcy Court.

"**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, or the docket of any such other court, the operation or effect of which has not been stayed, reversed or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing or leave to appeal has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending; *provided, however,* the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order.

"**Free and Clear**" shall mean free and clear of all Liens, Claims, Causes of Action, encumbrances, interests, claims, pledges, security interests, rights of setoff, restrictions or limitation on use, successor liabilities, conditions, rights of first refusal, options to purchase, obligations to allow participation, agreements or rights, rights asserted in litigation matters, rights asserted in adversary proceedings in this Case, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of the Debtor or the Estate, and all expenses, and charges, of any type under, among other things, any document, instrument, agreement, affidavit, matter filed of record, cause, or state or federal law, whether known or unknown, legal or equitable, and all liens, rights of offset, replacement liens, adequate protection liens, charges, obligations, or claims granted, allowed or directed in any Order, which are not otherwise released or satisfied under this Plan.

"**Frost**" means Frost Bank, formerly the Frost National Bank.

"**Frost Collateral**" means all real property listed in the Debtor's Schedule "A" with the exception of the BCC Headquarters, all personal property except for the pieces in which Komatsu and Wells Fargo have purchase money liens, the proceeds from such property, and insurance proceeds and any other property in which Frost has a perfected lien.

"**General Unsecured Claim**" means an unsecured Claim that is not an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, an Other Secured Claim or a Subordinated Claim. This definition specifically includes, without limitation, any Rejection Damages Claim or any Claim for penalties on, with respect to, or arising in connection with, any Priority Tax Claim or Secured Tax Claim.

"**Impaired**" means, with respect to any Claim or Interest, that such Claim or Interest is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Indemnification Obligation**" means any obligation of the Debtor or its Estate to indemnify, reimburse, or provide contribution pursuant to by-laws, partnership agreements, limited liability company agreements, articles or certificates of incorporation or similar organizational documents or pursuant to contracts or otherwise.

"**Insider**" has the meaning set forth in section 101(31) of the Bankruptcy Code.

"**Interest**" means the legal, equitable, contractual or other rights of any Person (i) with respect to BCC Interests or (ii) to acquire or receive any of the foregoing.

"**Komatsu**" means Komatsu Financial Limited Partnership.

"**Liberty**" means Liberty Mutual Insurance Company.

"**Lien**" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

"**Liquidating Trust**" shall mean the liquidating trust to be formed under the Plan for the benefit of Creditors holding Allowed Claims.

"**Liquidating Trust Agreement**" shall mean the Liquidating Trust Agreement to be executed by the Debtor, Frost and the Liquidating Trustee which will be included in the Plan Supplement.

"**Liquidating Trust Beneficiaries**" shall mean the holders of Allowed Claims. Holders of Allowed Claims are also Liquidating Trust Beneficiaries to the extent that each holder of an Allowed Claim in the preceding Class has been paid in full.

"**Liquidating Trustee**" shall mean the trustee of the Liquidating Trust to be named in the Plan Supplement and any successor to the Liquidating Trustee.

"**Liquidating Trust Assets**" shall mean those assets and the proceeds of the sale of the assets identified as Debtor's real property in Schedule A and the personal property in Schedule B (collectively, the "Schedules) and amended from time to time, which were filed by the Debtor in the Bankruptcy Case (except as otherwise excluded herein); the Avoidance Actions; and the Litigation Rights.   Provided, however, Liquidating Trust Assets do not include any assets or proceeds which Debtor has sold pursuant to an Order from the Bankruptcy Court or the Reserved Actions.  The liens and secured claims of Creditors that existed prior to the Effective Date will remain valid liens and will attach to all assets transferred to the Liquidating Trust on the Effective Date.

"**Litigation Rights**" means the claims, rights of action, suits or proceedings, whether at law or in equity, whether known or unknown that the Debtor or the Estate may hold against any Person, including, without limitation, claims or causes of action arising under or pursuant to Chapter 5 of the Bankruptcy Code.

"**Lease**" shall mean any Lease of real or personal property which has not terminated according to its own terms prior to the Effective Date or which was not otherwise terminated prior to the Petition Date. Such leases are deemed to be assumed as a part of the confirmation process.

"**Non-Appealable Order**" shall mean an Order or order of another court of competent jurisdiction on its docket as to which (a) the time to appeal, petition for certiorari, or move for reargument, new trial or rehearing shall then be pending; or (b) in the event that any such appeal, writ of certiorari, reargument, new trial or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument, new trial or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument, new trial or rehearing shall have expired; provided, however, that no order shall fail to be a Non-Appealable Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or a similar rule under the Federal Rules of Bankruptcy Procedure may be filed with respect to such order.

"**Old Securities**" means, collectively, the Ballenger Construction Interests and any other note, bond or indenture evidencing or creating any indebtedness or obligation of the Debtor or the Estate.

"**Other Priority Claim**" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"**Other Secured Claim**" means a Secured Claim arising prior to the Petition Date, other than an the purchase money secured claims or the Bond Claims.

"**PBGC**" means the Pension Benefit Guaranty Corporation, a wholly-owned United States government corporation created by ERISA to administer the mandatory pension plan termination insurance program established under Title IV of ERISA.

"**Pension Plans**" has the meaning set forth in Section 6.4 of the Plan.

"**Person**" means any person, individual, firm, partnership, corporation, trust, association, company, limited liability company, joint stock company, joint venture, governmental unit, or other entity or enterprise.

"**Petition Date**" means December 7, 2012, the date on which the Debtor filed its petition for relief commencing the Chapter 11 Case.

"**Plan Supplement**" means the supplement to the Plan containing, without limitation, the information and forms for the Liquidating Trust

"**Priority Tax Claim**" means a Claim that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code, including a Secured Tax Claim (to the extent such Claim is secured by property of the Estate).

"**Professional**" means any professional employed by the Debtor in the Chapter 11 Case by order of the Bankruptcy Court, excluding any of the Debtor's ordinary course professionals.

"**Professional Fee Claim**" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services rendered after the Petition and prior to and including the Effective Date.

"**Professional Persons**" shall mean persons retained to be compensated pursuant to section 327, 328, 330, 363, 503(b) and/or 1103 of the Bankruptcy Code.

"**Pro Rata**" means, at any time, the proportion that the amount of a Claim in a particular Class or Classes (or portions, thereof, as applicable) bears to the aggregate amount of all Claims (including Disputed Claims) in such Class or Classes, unless the Plan provides otherwise.

"**Proof of Claim**" means a proof of claim filed with the Bankruptcy Court in the Chapter 11 Case.

"**Reinstated**" means (i) leaving unaltered the legal, equitable and contractual rights to which the holder of a Claim is entitled so as to leave such Claim unimpaired in accordance with section 1124 of the Bankruptcy Code; or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (A) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, or of a kind that section 365(b)(2) expressly does not require to be cured, (B) reinstating the maturity of such Claim as such maturity existed before such default, (C) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, (D) if such Claim arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the holder of such Claim (other than the Debtor or an Insider) for any actual pecuniary loss incurred by such holder as a result of such failure and (E) not otherwise altering the legal, equitable or contractual rights to which the holder of such Claim is entitled; *provided, however,* that any Claim that is Reinstated under the Plan shall be subject to all limitations set forth in the Bankruptcy Code, including, in particular, sections 502 and 510.

**"Rejection Damages Claim"** means a Claim arising from the Debtor's rejection of a contract or lease, which Claim shall be treated as a General Unsecured Claim and shall be subject to the terms and conditions set forth in the Plan.

**"Reserved Claims"** means those claims and causes of action belonging to the Debtor and/or the Estate, as specified in Section 10.7 herein or as specifically reserved in the Disclosure Statement, which are not released by this Plan.

**"Scheduled"** shall mean, with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

**"Schedules"** means, collectively, the schedules of assets and liabilities, the list of equity interests, and the statements of financial affairs filed by the Debtor with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such have been or may be amended or supplemented by the Debtor from time to time in accordance with Bankruptcy Rule 1009.

**"Section 363 Sale"** means a sale of Estate assets to a purchaser and assumption and assignment to such purchaser of certain executory contracts and unexpired leases under sections 363 and 365 of the Bankruptcy Code pursuant to an order of the Bankruptcy Court.

**"Secured Claim"** means a Claim (i) that is secured by a Lien on property in which the Estate has an interest, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable State law, or a Claim that is subject to a valid right of setoff; (ii) to the extent of the value of the holder's interest in the Estate's interest in such property or to the extent of the amount subject to a valid right of setoff, as applicable; (iii) the amount of which is agreed upon in writing by the Debtor or the Reorganized Debtor and the holder of such Claim or determined, resolved or adjudicated by a Final Order; or (iv) that is otherwise designated as a Secured Claim pursuant to this Plan.

**"Secured Tax Claim"** means a Priority Tax Claim that is also a Secured Claim, but is treated as a Priority Tax Claim pursuant to section 1129(a)(9)(D) of the Bankruptcy Code.

**"Subordinated Claim"** means any Claim against the Debtor that is subordinated pursuant to either section 510(b) or 510(c) of the Bankruptcy Code, which includes, but is not limited to, any Claim arising from the rescission of a purchase or sale of any Old Security, any Claim for damages arising from the purchase or sale of an Old Security, or any Claim for reimbursement, contribution or indemnification on account of any such Claim.

**"Substantial Contribution Claim"** means a claim for compensation or reimbursement of costs and expenses relating to services rendered in making a substantial

contribution in the Chapter 11 Case pursuant to sections 503(b)(3), (4) or (5) of the Bankruptcy Code.

**"Undeliverable or Unclaimed Payment or Distribution"** shall mean a Payment or Distribution by the Liquidating Trustee pursuant to this Plan that is either (a) attributable to a holder of an Allowed Claim that has failed to prepare, execute and return to the Liquidating Trustee an Internal Revenue Service Form W-9 if so requested by the Liquidating Trustee, or (b) returned to the Liquidating Trustee as undeliverable or otherwise unclaimed.

**"Unimpaired"** means, with respect to any Claim, that such Claim is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**"Unsecured Claims"** means;

      a.      The portion of the Claim of any Creditor holding a Secured Claim as to which treatment as an Unsecured Claim is required or permitted by the provisions of Section 506(a) of the Bankruptcy Code;

      b.      Any and all other Claims not otherwise provided for in the Plan

**"Voting Deadline"** means the deadline established by the Bankruptcy Court by which each holder of a Claim in Classes that are entitled to vote on the Plan must submit the ballot indicating each such holder's vote on the Plan.

**"Voting Record Date"** means the date established by the Bankruptcy Court for determining the holders of Claims entitled to vote on the Plan.

**"Wells Fargo"** means Wells Fargo Bank, N.A.

**"Ziehe"** means NAI Rio Grande Valley LLC and agent Eric Ziehe which have been retained by the estate and granted an exclusive listing agreement to sell the BCC Headquarters.

**"Zurich"** means Colonial and F&D, collectively.

A term in this Plan not otherwise defined herein but used in the Bankruptcy Code shall have the definition assigned to such term in the Bankruptcy Code.

## 2.    CLASSIFICATION OF CLAIMS AND RELEVANT DEADLINES

### 2.1   *Introduction*

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and such Claim or Interest

has not been paid, released, or otherwise settled prior to the Effective Date. A Claim or Interest may be and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

    2.2    *Unclassified Claims*

        In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and Secured Tax Claims are not classified.

    2.3    *Classification of Claims and Interests*

        The classification of Claims and Interests against the Debtor pursuant to the Plan is as follows:

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote – Deemed to Accept |
| 2 | Frost Secured Claims | Impaired | Entitled to Vote |
| 3 | Zurich Secured Claims | Impaired | Entitled to Vote |
| 4 | Liberty Secured Claims | Impaired | Entitled to Vote |
| 5 | FCB Secured Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims, Unsecured Deficiency Claims | Impaired | Entitled to Vote |
| 7 | Subordinated Claims | Impaired | Not Entitled to Vote – Deemed to Reject |
| 8 | BCC Interests | Impaired | Not Entitled to Vote – Deemed to Reject |

## 3.    TREATMENT OF CLAIMS AND INTERESTS

    3.1    *Unclassified Claims*

    (a)    **Administrative Claims**

        With respect to each Allowed Administrative Claim, except as otherwise provided for in Section 10.1 of this Plan, on, or as soon as reasonably practicable after, the latest of (i) the Effective Date, (ii) the date such Administrative Claim becomes an Allowed Administrative Claim; or (iii) the date such Administrative Claim becomes payable pursuant to any agreement between the Debtor and the holder of such Administrative Claim, the holder of each such Allowed Administrative Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim, (A) Cash equal to the unpaid portion of such Allowed Administrative Claim or (B) such different treatment as to which the Debtor and such holder shall have agreed upon in writing; *provided, however*, that Allowed

Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

(b)     **Priority Tax Claims**

Each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim as shall have been determined by the Debtor, (i) regular installments payable in Cash, over a period not exceeding five years after the Petition Date, having a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (ii) such different treatment as to which the Debtor and such holder have agreed in writing; *provided* that such treatment is on more favorable terms to the Debtor (or Liquidating Trustee after the Effective Date), than the treatment set forth in clause (i) above; or (iii) payment in full in Cash on the later of (A) the Distribution Date and (B) the date on which such Claim becomes an Allowed Claim.

Each holder of an Allowed Priority Tax Claim shall not receive any Cash or other distribution on account of a penalty on, with respect to, or arising in connection with, such Allowed Priority Tax Claims.  All penalties on, with respect to, or arising in connection with, any Allowed Priority Tax Claim shall be treated as Class 6 General Unsecured Claims.

(c)     **Secured Tax Claims**

During the administration of the Case, the Debtor has paid all pre-petition and post-petition personal property ad valorem taxes.  Nearly all of the Debtor's rolling stock, equipment and machinery has been sold through various auctions throughout the post-petition period of this case.  Pursuant to the Court's Order permitting the sale of the Debtor's equipment through Ritchie Bros. Auctions, the Debtor has paid all outstanding personal property taxes.

The Debtor or Liquidating Trustee will continue to pay the ad valorem real property taxes as the real property is sold.  At closing, the Debtor or Liquidating Trustee will pay the property taxes outstanding for each piece of sold property.

3.2     *Unimpaired Classes of Claims and Interests*

(a)     **Class 1:  Other Priority Claims**

On, or as soon as reasonably practicable after, the latest of (i) the Distribution Date, (ii) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or (iii) the date on which such Allowed Other Priority Claim becomes payable pursuant to any agreement between the Debtor and the holder of such Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed

Other Priority Claim, either (A) Cash on the Effective Date equal to the unpaid portion of such Allowed Other Priority Claim or (B) such different treatment as to which the Debtor and such holder shall have agreed upon in writing; *provided* that such treatment is on more favorable terms to the Estate (or the Liquidating Trustee after the Effective Date), than the treatment set forth in clause (A) above.

### 3.3    *Impaired Voting Classes of Claims*

(a)    **Class 2:  Frost Secured Claims**

Frost, as a holder of an Allowed Secured Claim will receive payments, less applicable taxes, closing costs and fees from the sale of Frost Collateral.  The Liquidating Trustee shall sell Assets, including the Frost Collateral.  Upon the sale of Frost Collateral, the Liquidating Trustee will remit the proceeds from the sale less Trustee commission, closing costs, applicable taxes, and fees to Frost.

Frost has received approximately $12,266,104.40 to date.  Additionally, all pre-petition and post-petition ad valorem personal property taxes have been paid in full to the various taxing jurisdictions.  As real property which constitutes Frost Collateral is sold by the Debtor and/or Liquidating Trustee, the proceeds, less closing costs and taxes will be remitted to Frost until its secured claim is paid in full.

(a)    **Class 3:  Zurich Secured Claim**

Zurich is a secured creditor by virtue of the Agreement of Indemnity executed between the Debtor and Zurich on or about April 15, 2009.  The Debtor also entered into a supplemental Agreement with Zurich on or about October 9, 2012.  Under these two documents, the Debtor agreed to direct and instruct the owners of the projects bonded by Zurich to pay all contract proceeds on those projects directly to Zurich.  Therefore, Zurich is secured by the contracts for construction jobs on which it has provided a bond and the receivables from those contracts.

To the extent cash and receivables are collected from Zurich bonded jobs, Zurich will continue to collect both.  Zurich shall not receive any further distribution from the Debtor on account of its secured claim.

(b)    **Class 4:  Liberty Secured Claim**

Liberty is a secured creditor by virtue of the General Agreement of Indemnity executed between the Debtor and Liberty on or about May 11, 2010.  The Debtor also entered into a Memorandum of Understanding on or about September 20, 2012.  Under these two documents, the Debtor agreed to direct and instruct the owners of the projects bonded by Liberty to pay all contract proceeds on those projects directly to Liberty.  Therefore, Liberty is secured by the contracts for construction jobs on which it has provided a bond and the receivables from those contracts.

To the extent cash and receivables are collected from Liberty bonded jobs, Liberty will continue to collect both. Liberty shall not receive any further distribution from the Debtor on account of its secured claim.

    (c)    **Class 5: FCB Secured Claims**

FCB is secured by the BCC Headquarters described as a 14.52 acres land out of Block 23, Palmetal Subdivision, Cameron County, Texas, according to the map or plat thereof recorded in Volume 4, Page 2, Map Records of Cameron County, Texas and further described in the Deed of Trust recorded at Volumes 14427, Page 285 of the Official Public Records of Cameron County (the "BBC Headquarters").

At this time, the BCC Headquarters has substantial equity and Ziehe is currently marketing the property to be sold. FCB's claim related to BCC Headquarters is allowed and fully secured. The Debtor and/or Liquidating Trustee will pay the secured claim of FCB through the proceeds of the sale of the BCC Headquarters in the manner set forth in this paragraph.

The Debtor shall:

A.    List and maintain an active listing with Eric Ziehe of Rioco Realtors as approved by the Bankruptcy Court and continuously market the property until sold. In the event the Debtor and/or Liquidating Trustee determine to change the active listing with the Realtor, they will notify FCB ten (10) days in advance of the execution of a new Listing Agreement and FCB shall be given an opportunity to object to the change in the listing agent and be heard by this court prior to any change. Any written offer to purchase the property shall be forwarded to the Movant within three (3) business days of receipt by the listing broker. The Debtor and/or Liquidating Trustee's intent to either accept or reject an offer for the purchase of the property will be communicated ten (10) days in advance of the Debtor and/or Liquidating Trustee's actual or effective acceptance or rejection of the offer and FCB shall have an opportunity to object to the proposed acceptance or rejection of the offer and be heard by this court prior to any such acceptance or rejection.

B.    Maintain insurance on the property and provide continuance proof of insurance to FCB.

C.    Continue to pay all property taxes due on the property and provide proof of payment to FCB.

D.    Maintain the utility service to the property and allow periodic inspections by FCB upon reasonable notice to the Debtor and/or Liquidating Trustee.

If the Debtor fails to comply with sub-paragraph A,B,C and D above, FCB must give the Debtor/and Liquidation Trustee and Debtor/Liquidating counsel written

notice by regular and certified mail. If the Debtor/Liquidating Trustee fails to comply within fourteen (14) days of the date that notice was sent, it is a Final Default under this Plan. FCB is only required to send two notices of default under this Order. If there is a third failure to comply with sub-paragraph A, B, C and D it is a Final Default and no further notice of an opportunity to cure must be given and FCB may foreclose its collateral.

FCB's allowed secured claim is in the amount of $307,726.04 as of November 15, 2012 with interest continuing to accrue beginning November 16, 2012 at the rate of 7.9% per annum, plus FCB's reasonable attorney's fees. Notwithstanding, §5.5 of this Plan regarding "Cancellation of Old Securities and Agreements," the terms of the Real Estate Lien Note dated October 15, 2007 in the original principal amount of $2,200,000.00 as secured by the Deed of Trust described above shall continue in full force and effect as if renewed and extended for the amount of time necessary to consummate this portion of the Plan until the sale of the BCC Headquarters. FCB shall be paid at closing and FCB shall deliver a Release of Lien of the Deed of the Trust on the BCC Headquarters.

In the event the BCC Headquarters has not been sold on or before three hundred sixty-five (365) days after the effective date, FCB shall be permitted to petition this court for a change in broker or other methods related to the sale of the property or to foreclose its interest in the real property.

(d)     **Class 6:  General Unsecured Claims, Deficiency Claims**

The Class 6 claims consist of the general unsecured creditor claims listed on Schedule "F" of the Debtor's Schedules. Additionally, the Class 6 claims include the unsecured deficiency claims of all secured creditors including Frost, Zurich, Liberty, Komatsu, and Wells Fargo.

The Class 6 claims will be paid with the proceeds from the sale of unencumbered assets. These assets include the equity from the sale of the BCC Headquarters and the proceeds from the collection of any Avoidance Actions and/or Litigation Rights.

On or as soon as reasonably practicable after the Effective Date, each holder of an Allowed General Unsecured Claim will receive, in full satisfaction, settlement of and in exchange for such Allowed Claim, its Pro Rata Share of the proceeds from the sale of unemcumbered assets and/or collection from the prosecution of Avoidance Actions and/or Litigation Rights.

3.4     *Impaired Nonvoting Classes of Claims and Interests*

(a)     **Class 7:  Subordinated Claims**

Under the Plan, Subordinated Claims will not receive or retain any property on account of such Claims. All Subordinated Claims will be discharged as of the Effective Date.

(b)    **Class 8: BCC Interests**

Under the Plan, all BCC Interests of any kind shall be cancelled as of the Effective Date and the holders thereof shall not receive or retain any property under the Plan on account of such Interests.

3.5    *Reservation of Rights Regarding Claims*

Except as otherwise explicitly provided in the Plan, including without limitation, Sections 10.7, 10.8 and/or 10.10 hereof, nothing shall affect the Debtor's, the Estate's or the Liquidating Trustee's rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

3.6    *Impairment Controversies*

If a controversy arises as to whether any Claim, or any class of Claims, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

**4.    ACCEPTANCE OR REJECTION OF THE PLAN**

4.1    *Impaired Classes and Interests Entitled to Vote*

Holders of Claims in the Impaired Voting Classes of Claims are entitled to vote as a Class to accept or reject the Plan. Accordingly, unless otherwise provided in a Plan Supplement, the votes of holders of Claims in Classes 2, 3, 4, 5 and 6 (together, the "**Voting Classes**" and each a "**Voting Class**") are entitled to vote with respect to the Plan.

4.2    *Acceptance by an Impaired Class*

In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

4.3    *Presumed Acceptances by Unimpaired Classes*

Unless provided otherwise in a Plan Supplement, Claims in Class 1 (the "**Unimpaired Class**") are Unimpaired under the Plan. Under section 1126(f) of the

Bankruptcy Code, holders of such Unimpaired Claims are conclusively presumed to have accepted the Plan, and the votes of such Unimpaired Claim holders shall not be solicited.

### 4.4    *Classes Deemed to Reject the Plan*

Unless provided otherwise in a Plan Supplement Holders of Claims and Interests in Classes 7 and 8 (together, the "**Deemed Rejecting Classes**") are not entitled to receive or retain any property under the Plan.   Under section 1126(g) of the Bankruptcy Code, such holders are deemed to have rejected the Plan, and the votes of such holders shall not be solicited.

### 4.5    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

Because of the deemed rejection of the Plan by the Deemed Rejecting Classes, the Debtor seeks confirmation of the Plan, as it may be amended or modified from time to time, under section 1129(b) of the Bankruptcy Code.   In addition, the Debtor is prepared to request confirmation of the Plan, as it may be amended and modified from time to time, under section 1129(b) of the Bankruptcy Code with respect to each Voting Class, if applicable, if a Voting Class rejects the Plan.   The Debtor reserves the right to alter, amend, or modify the Plan, the Plan Supplement, or any exhibit, in accordance with the provisions of the Plan, including, without limitation, Section 10.12 of this Plan, as necessary to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

## 5.    MEANS FOR IMPLEMENTING THE PLAN

### 5.1    *Means of Implementation*

On the Effective Date, the Debtor will transfer all Estate Assets to a Liquidating Trust to be administered.   The Liquidating Trust Assets will include all Litigation Rights and Avoidance Actions.   The Liquidating Trustee, to be named through the Plan Supplement, will be a non-insider of the Debtor.   The Trust shall be governed by the laws of Texas and the Liquidating Trust Agreement to be included in the Plan Supplement.

### 5.2    *Summary of the Reorganization of the Debtor*

If, on or prior to the Effective Date, the Debtor has not liquidated all Estate assets pursuant to a Court Order, the Debtor shall transfer, except as otherwise provided herein, all of the Estate's assets to the Liquidating Trust Free and Clear of all Claims, Liens, charges, other encumbrances and Interests.   Additionally, the Debtor will transfer all Avoidance Actions and Litigation Rights to the Liquidating Trust on the Effective Date.   On or before the Effective Date, if the Debtor has not already assumed and assigned all of the Assumed Executory Contracts, the Debtor shall rejects all remaining Assumed Executory Contracts to the Liquidating Trust.   On and after the Effective Date, the Liquidating Trustee may liquidate the Liquidating Trust Assets, may use, acquire and dispose of Liquidating Trust Assets, may retain, compensate and pay any

professionals or advisors, and compromise or settle any causes of action, claims or interests without supervision of or approval by the Bankruptcy Court and Free and Clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan and the Confirmation Order.

5.3    *Continued Corporate Existence*

The Debtor shall cease to exist after the Effective Date.  The Debtor shall be authorized to wind down and execute any documents, forms or applications necessary to formally shut down and take all other actions that the Debtor determines to be necessary or appropriate, including making filings or recordings that may be required by applicable state law.

5.4    *Certificate of Incorporation and By-laws*

The certificate or articles of incorporation, by-laws, articles of organization or operating agreement, as applicable, of the Debtor shall cease to be effective as of the Effective Date.

5.5    *Cancellation of Old Securities and Agreements*

On the Effective Date, except as otherwise provided for herein, (i) the Old Securities shall be deemed extinguished, cancelled and of no further force or effect, and (ii) the obligations of the Debtor (and the Liquidating Trustee) under any agreement, indentures, or certificates of designations governing the Old Securities and any other note, bond, or indenture evidencing or creating any indebtedness or obligation of the Debtor with respect to the Old Securities shall be discharged in each case without further act or action under any applicable agreement, law, regulation, order, or rule and without further act or action on the part of the Bankruptcy Court or any Person

5.6    *Directors and Officers of the Debtor*

The current Officers and Directors of the Debtor shall cease to continue to be Officers and Directors, and no new Officers or Directors shall be appointed.

5.7    *Transfer of Assets*

The property of the Estate, including Avoidance Actions, Litigation Rights and Assets, shall vest in the Liquidating Trust as of the Effective Date.  Thereafter, the Liquidating Trustee may use, acquire and dispose of such property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court.  Except as specifically provided in the Plan or the Confirmation Order, as of the Effective Date, all property of the Liquidating Trust shall be Free and Clear of all Claims and Interests.

5.8    *Liquidating Transactions*

After the Effective Date, the Liquidating Trustee may enter into such transactions and may take such actions as may be necessary or appropriate, in accordance with any applicable state law, to effect a complete liquidation of the Liquidating Trust Assets so long as such actions are consistent with the Liquidating Trust provisions and state law.

### 5.9 *Preservation of Rights of Action*

Except as otherwise provided in the Plan, the Confirmation Order, or the Plan Supplement, and in accordance with section 1123(b) of the Bankruptcy Code, on the Effective Date, the Liquidating Trust shall hold all Litigation Rights that the Estate or Debtor may hold against any Person. The Liquidating Trust shall retain and may enforce, sue on, settle or compromise (or decline to do any of the foregoing) all such Litigation Rights except for the Reserved Actions.

### 5.10 *Exemption from Certain Transfer Taxes*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtor or the Estate to the Liquidating Trust or any other Person pursuant to the Plan in the United States, shall not be taxed under any law imposing a stamp tax, real estate transfer tax, sales or use tax, or other similar tax. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement distributions under the Plan, including the documents contained in the Plan Supplement.

### 5.11 *Plan Supplement*

The Debtor shall file a Plan Supplement with the Clerk of the Bankruptcy Court at least ten (10) Business Days prior to the Voting Deadline. The Debtor will disclose the name of the Liquidating Trustee, the terms of the Liquidating Trust and the Liquidating Trust Agreement through the Plan Supplement. Upon such filing, all documents included in the Plan Supplement may be inspected via the Bankruptcy Court's electronic filing system at https://ecf.txsb.uscourts.gov. Holders of Claims or Interests may obtain a copy of any document included in the Plan Supplement upon written request to the Debtor's counsel in accordance with Section 10.15 of the Plan. The Debtor reserves the right to alter, amend or modify the Plan Supplement at any time prior to the Effective Date.

## 6. TREATMENT OF CONTRACTS AND LEASES

### 6.1 *Assumed Contracts and Leases*

(a)    On the Effective Date, and to the extent permitted by applicable law, all of the Estate's executory contracts and unexpired leases will be rejected by the Debtor unless such executory contract or unexpired lease: (i) is being assumed pursuant to the Plan or is identified in the Plan Supplement as an executory contract or unexpired

lease being assumed pursuant to the Plan; (ii) is the subject of a motion to assume filed on or before the Confirmation Hearing; or (iii) has previously been rejected or assumed.

(b)     Each contract and lease that is assumed shall include (i) all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other documents that in any manner affects such contract or lease and (ii) all contracts or leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises and any other interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

6.2     *Payments Related to Assumption of Contracts and Leases*

Any monetary amounts by which each contract and lease to be assumed pursuant to the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount.

If there is a dispute regarding (a) the nature or amount of any Cure, (b) the ability of the Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption; *provided, however*, that the Debtor shall be authorized to reject any contract or lease to the extent the Debtor, in the exercise of its sound business judgment, concludes that the amount of the Cure obligation as determined by such Final Order, renders assumption of such contract or lease unfavorable to the Debtor.  In the event the Debtor so rejects any previously assumed contract or lease, and such rejection gives rise to a Rejection Damages Claim, such Rejection Damages Claim arising out of such rejection shall be limited to the Allowed Rejection Damage Claim Amount.

6.3     *Rejected Contracts and Leases*

The Debtor reserves the right, at any time prior to the Effective Date, except as otherwise specifically provided herein, to seek to reject any contract or lease to which the Debtor is a party and to file a motion requesting authorization for the rejection of any such contract or lease.  Any contracts or leases that expire by their terms prior to the Effective Date are deemed to be terminated on the expiration date, unless previously assumed or otherwise disposed of by the Debtor.  As of the Effective Date, the Debtor will reject the executory contracts and unexpired leases set forth on <u>Exhibit B</u> to the Disclosure Statement or any "Schedule of Rejected Executory Contracts and Unexpired Leases" filed by the Debtor with the Bankruptcy Court before the entry of the Confirmation Order.

6.4     *Compensation and Benefit Programs*

(a)      All Employee Programs in effect before the Effective Date shall be deemed rejected as of the Effective Date.

(b)      As of the Effective Date, any and all equity incentive plans, equity ownership plans, or any other equity-based plans entered into before the Effective Date, including Claims arising from any change of control provision therein, shall be deemed to be, and shall be treated as though they are, contracts that are rejected pursuant to section 365 of the Bankruptcy Code under the Plan pursuant to the Confirmation Order. Any Claims resulting from such rejection shall constitute BCC Interests and shall be treated in accordance with Section 3.3(b) of the Plan. For the avoidance of doubt, in no event shall this Section 6.4(b) be held to impair any Employee Program.

6.5      *Certain Indemnification Obligations*

Indemnification Obligations owed to those of the Debtor's directors, officers and employees serving on the Effective Date shall be deemed to be, and shall be treated as though they are, contracts that are rejected pursuant to section 365 of the Bankruptcy Code under the Plan, and such Indemnification Obligations (subject to any defenses thereto) shall survive the Effective Date of the Plan and remain unaffected by the Plan, irrespective of whether obligations are owed in connection with an occurrence prior to or after the Petition Date.

Indemnification Obligations owed to those of the Debtor's directors, officers and employees who had served prior to, on or after the Petition Date, but who are not serving on the Effective Date shall be deemed to be, and shall be treated as though they are, contracts that are rejected pursuant to section 365 of the Bankruptcy Code under the Plan pursuant to the Confirmation Order. Any Claims resulting from such rejection shall constitute Subordinated Claims and shall be treated in accordance with Section 3.4(a) of the Plan.

6.6      *Extension of Time to Assume or Reject*

Notwithstanding anything set forth in Article 6 of the Plan, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the right of the Liquidating Trustee to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired. The deemed assumption provided for in Section 6.1(a) of the Plan shall not apply to any such contract or lease, and any such contract or lease shall be assumed or rejected only upon motion of the Liquidating Trustee following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

6.7      *Claims Arising from Assumption or Rejection*

(a)     Except as otherwise provided in the Plan or by Final Order of the Bankruptcy Court, all (i) Allowed Claims arising from the assumption of any contract or lease shall be treated as Administrative Claims pursuant to Section 3.1(a) of the Plan; and (ii) Allowed Rejection Damages Claims shall be treated as General Unsecured Claims pursuant to and in accordance with the terms of Section 3.3(b) of the Plan.

(b)     If the rejection by the Debtor or Liquidating Trustee, pursuant to the Plan or otherwise, of a contract or lease results in a Rejection Damages Claim, then such Rejection Damages Claim shall be forever barred and shall not be enforceable against the Debtor or the Liquidating Trustee or the properties of any of them unless a Proof of Claim is filed and served upon counsel to the Liquidating Trustee on or prior to the later of (i) thirty (30) days after entry of the order authorizing the rejection of such contract or lease and (ii) fifteen (15) days after the date designated as the rejection date in the order authorizing the rejection of such contract or lease.   The Debtor and/or Liquidating Trustee reserves their rights to object to any Rejection Damages Claim.

## 7.    PROVISIONS GOVERNING DISTRIBUTIONS

### 7.1    *Distributions for Claims Allowed as of the Effective Date*

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all distributions to holders of Allowed Claims as of the applicable Distribution Date shall be made on or as soon as practicable after the applicable Distribution Date. The Liquidating Trustee shall have the right, in its discretion, to accelerate any Distribution Date occurring after the Effective Date if the facts and circumstances so warrant.

### 7.2    *Distribution to Holders of Allowed Claims*

The Estate shall make distributions under this Plan through the Liquidating Trustee, pursuant to the following terms:

(a)     Unless otherwise agreed to between the Liquidating Trustee and the holder of an Allowed Claim, the Liquidating Trust shall make distributions to the holders of Allowed Claims in the same manner and to the same addresses as such payments are made in the ordinary course of the Debtor's business.

(b)     No distributions shall be made on Disputed Claims until and unless such Disputed Claim becomes an Allowed Claim.

(c)     No reserve shall be required with respect to any Disputed Claim.

(d)     On or before the Effective Date, the Debtor shall designate the Person to serve as the Liquidating Trustee under the Plan on mutually agreeable terms and conditions.  If the Liquidating Trustee is an independent third party designated to serve in such capacity, such Liquidating Trustee shall receive, without further

Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out of pocket expenses incurred in connection with such services. No Liquidating Trustee shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

###### 7.3    *Application of Distribution Record Date*

At the close of business on the Distribution Record Date, there shall be no further changes in the record holders of any Claim. The Liquidating Trustee, and its respective agents, successors, and assigns shall have no obligation to recognize the transfer of any Claim occurring after the Distribution Record Date.

###### 7.4    *Withholding and Reporting Requirements*

In connection with the Plan and all distributions hereunder, the Liquidating Trustee shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal state, provincial, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan (a) each holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any such withholding tax obligations imposed on the Liquidating Trustee by any governmental unit, on account of such distribution, and (b) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has either made arrangements satisfactory to the Liquidating Trustee for the payment and satisfaction of such withholding tax obligations, or timely provided the Liquidating Trustee with either an IRS Form W-9 or an applicable IRS Form W-8 certifying that such holder is not subject to U.S. Federal withholding tax with respect to such distribution. Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution to be held by the Liquidating Trustee until such time as the Liquidating Trustee is satisfied with the holder's arrangements for any withholding tax obligations.

###### 7.5    *Setoffs*

Except for any Claim that is expressly Allowed under the Plan, the Liquidating Trustee may, but shall not be required to, set off against any Allowed Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Estate or the Liquidating Trustee may have against the holder of such Claim; *provided, however,* that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such claim that the Estate or the Reorganized Debtor may have against such holder.

7.6    *Allocation of Distributions*

All distributions received under the Plan by holders of Claims shall be deemed to be allocated first to the principal amount of such Claim as determined for United States federal income tax purposes and then to accrued but unpaid interest, if any, with respect to such Claim.

## 8.    CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

8.1    *Conditions to Confirmation*

The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived in accordance with Section 8.3 of the Plan:

(a)    an order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered; and

(b)    the proposed Confirmation Order shall be in form and substance reasonably satisfactory to the Debtor and the Liquidating Trustee.

8.2    *Conditions to Effective Date*

The following conditions precedent must be satisfied or waived on or prior to the Effective Date in accordance with Section 8.3 of the Plan:

(a)    the Confirmation shall have been entered in form and substance reasonably satisfactory to the Debtor and the Liquidating Trustee, and shall, among other things:

(i)    provide that the Debtor and Liquidating Trustee are authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, to enter into, implement, and perform under the contracts, instruments, and other agreements or documents created in connection with the Plan;

(ii)    execute the Liquidating Trust Agreement;

(iii)    provide that, notwithstanding Rule 3020(e) of the Bankruptcy Rules, the Confirmation Order shall be immediately effective, subject to the terms and conditions of the Plan;

(b)     the Confirmation Order shall not then be stayed, vacated or reversed;

(c)     the Liquidating Trust Agreement shall be in form and substance reasonably satisfactory to the Debtor, Liquidating Trustee and Frost, and to the extent of any such documents contemplates execution by one or more Persons, any such document shall have been executed and delivered by the respective parties thereto, and all conditions precedent to the effectiveness of each such document shall have been satisfied or waived;

(d)     all material authorizations, consents and regulatory approvals required, if any, in connection with consummation of the Plan shall have been obtained; and

(e)     all material actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

### 8.3     *Waiver of Conditions*

Each of the Conditions set forth in Sections 8.1 and 8.2 of the Plan, with the exception of the conditions contained in Section 8.1(a) and Sections 8.2(a)(i), (ii), (iii) and (b), may be waived in whole or in part by the Debtor without any notice to parties in interest or the Bankruptcy Court and without a hearing; *provided, however,* that such waiver will not be effective without the consent of Frost, which consent shall not be unreasonably withheld or delayed.

## 9.     RETENTION OF JURISDICTION

### 9.1     *Scope of Retention of Jurisdiction*

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:

(a)     with respect to Filed Claims or to the extent necessary with respect to other Claims, allow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the holder), including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(b)      hear and determine all applications for Professional Fee Claims and Substantial Contribution Claims; *provided, however,* that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of the Debtor or the Liquidating Trustee shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(c)      hear and determine all matters with respect to contracts or leases or the assumption or rejection of any contracts or leases to which the Debtor is a party or with respect to which the estate may be liable, including, if necessary and without limitation, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(d)      effectuate performance of and payments under the provisions of the Plan;

(e)      hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case or the Litigation Rights;

(f)      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and execute and implement all contracts, instruments and other agreements or documents created in connection with the Plan or the Confirmation Order;

(g)      hear and determine any disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including, without limitation, disputes arising under agreements, documents, or instruments executed in connection with the Plan, *provided, however,* that any dispute arising under or in connection with the Liquidating Trust shall be dealt with in accordance with the provisions thereof;

(h)      consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation or enforcement of the Plan or the Confirmation Order;

(j)      enter and implement such orders as my be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k)      hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation

Order, or any contract, instrument or other agreement or document created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

        (l)     enforce all orders, judgment, injunctions, releases, exculpations, indemnifications and ruling entered in connection with the Chapter 11 Case;

        (m)    except as otherwise limited herein, recover all assets of the Debtor and property of the Estate, wherever located;

        (n)     hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

        (o)     hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge;

        (p)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

        (q)     enter a final decree closing the Chapter 11 Case.

    9.2    *Failure of the Bankruptcy Court to Exercise Jurisdiction*

    If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in Section 9.1 of the Plan, the provisions of this Article 9 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## 10.    MISCELLANEOUS PROVISIONS

    10.1    *Professional Fee Claims and Substantial Contribution Claims*

    All final requests for payment of Professional Fee Claims and any Substantial Contribution Claims must be filed and served on the Debtor, the Liquidating Trustee, their counsel, counsel to Frost, counsel to Liberty, counsel to Zurich, the Creditors Committee and other necessary parties in interest no later than sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to such requests for payment must be filed and served on the Debtor, the Liquidating Trustee, their counsel, counsel to Frost, counsel to Liberty, counsel to Zurich, the Creditors Committee and other necessary parties in interest as well as the requesting Professional or other Person no later than twenty-one (21) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable request for payment was served.

10.2   *Dissolution of the Creditors Committee*

The Creditors Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code. On the Effective Date, the Creditors Committee shall be dissolved, the members thereof shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Case or the Plan and its implementation, and the retention or employment of the Creditors Committee's attorneys, accountants, professionals and other agents shall terminate, except with respect to (a) all Professional Fee Claims, (b) any Substantial Contribution Claims, and (c) any appeals of the Confirmation Order.

10.3   *Payment of Statutory Fees*

All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. All such fees that arise after the Effective Date shall be paid by the Liquidating Trustee and shall remain the obligation of the Liquidating Trustee until the Chapter 11 Case is closed, dismissed or converted.

10.4   *Successors and Assigns and Binding Effect*

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Person, including, but not limited to, the Liquidating Trustee and all other parties in interest in the Chapter 11 Case.

10.5   *Compromises and Settlements*

From and after the Effective Date, the Liquidating Trustee may compromise and settle Claims against it and other Claims that it may have against other Persons without any further approval by the Bankruptcy Court. Until the Effective Date, the Debtor expressly reserves the right to compromise and settle Claims against it or other claims that it may have against other Persons, subject to the approval of the Bankruptcy Court if, and to the extent, required.

10.6   *Releases and Satisfaction of Subordination Rights*

All Claims against the Debtor and all rights and claims between or among the holders of Claims relating in any manner whatsoever to any claimed subordination rights shall be deemed satisfied by the treatment under, described in, contemplated by, and/or implemented in Article 3 of the Plan. Distributions under, described in, contemplated by, and/or implemented by the Plan to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any holder of a Claim by reason of any claimed subordination rights or otherwise, so that

each holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.

10.7    *Releases by Debtor*

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, the Liquidating Trustee and any Person seeking to exercise the rights of the Debtor's Estates, including without limitation, any successor to the Debtor or the Liquidating Trustee or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code (collectively, the "**Releasing Parties**"), shall be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action (including claims or causes of action arising under Chapter 5 of the Bankruptcy Code), and the liabilities whatsoever, including for negligence, but excluding for fraud, willful misconduct, or gross negligence, in connection with or related to the Debtor, the Chapter 11 Case or the Plan (other than the rights of the Liquidating Trustee to enforce the Plan and the contracts, instruments and other agreements or documents delivered thereunder), and that may be asserted by or on behalf of the Debtor, the Estate, or the Liquidating Trustee, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Liquidating Trustee, the Chapter 11 Case, or the Plan, and that may be asserted by or on behalf of the Debtor, the Liquidating Trustee, the Estate (the "**Released Claims**") against: (i) any Professionals of the Debtor; (ii) any Professionals of the Liquidating Trustee, (iii) the members (but not in their individual capacities) and Professionals of the Creditors Committee (collectively, the "**Released Parties**"); *provided, however,* that nothing in this Section 10.7 shall be deemed to prohibit the Debtor or the Liquidating Trustee (or any successor thereto) from asserting and enforcing any of the following (collectively, the "**Reserved Claims**"):

(a)    Any claims, obligations, suits, judgments, demands, debts, rights, causes of action or liabilities they may have against any employee, director or officer that is based upon an alleged breach of a confidentiality, covenant not to compete or any other contractual or fiduciary obligation owed to the Debtor or the Reorganized Debtor;

(b)    Any and all Claims and causes of action that are listed in the Debtor's Schedules or Statement of Financial Affairs;

(c)    Any and all Claims and causes of action which are subject to pending litigation in either the Bankruptcy Court or a non-bankruptcy forum;

(d)    Any and all Claims against a Person, to the extent such Person asserts a crossclaim, a counterclaim and/or a Claim for setoff that seeks affirmative relief against the Debtor or its Estate;

(e)     All Avoidance Actions defined herein, but excluding any claims against Frost;

(f)     Any claim of wrongful offset or recoupment against a party entitled to receive distribution under this Plan.

10.8     *Discharge of the Debtor; Other Releases*

(a)     Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims of any nature whatsoever against the Debtor or any of its assets or properties and, regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, retained or distributed pursuant to the Plan on account of such Claims, upon the Effective Date the Debtor shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (i) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim Based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (iv) the holder of a Claim based upon such debt accepted the Plan.

(b)     As of the Effective Date, except as provided in the Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtor or Liquidating Trustee, any other or further claims, debts, rights, causes of action, claims for relief, liabilities or equity interests relating to the Debtor based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtor and termination of all BCC Interests, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim or terminated interest.

(c)     Notwithstanding any provision of the Plan or the Confirmation Order to the contrary, neither the Plan nor the Confirmation Order will release, discharge or exculpate the Debtor, the Liquidating Trustee or any third party from any debt owed to the Pension Plans or the PBGC under ERISA or the Code or enjoin or prevent the Pension Plans and the PBGC from collecting any such liability for a liable party.

10.9     *Injunction*

(a)     Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold or allege that they hold, a Claim or other debt or liability that is discharged or an Interest or other right of an

equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor, its Estate, the Liquidating Trustee or their respective property on account of any such discharged Claims, debts or liabilities or terminated Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or the Liquidating Trustee; or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.

(b)     Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, or may hold, a Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, cause of action, or liability that is released pursuant to Sections 10.6, 10.7 or 10.10 of the Plan are permanently enjoined from taking any of the following actions on account of such released Claims, terminated Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Lien or encumbrance; (iv) asserting a setoff against any debt, liability, or obligation due to any Released Parties; or (v) commencing or continuing any action, in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.

(c)     Without limiting the effect of the foregoing provisions of this Section 10.9 upon any Person, by accepting distributions pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section 10.9.

10.10   *Exculpation and Limitation of Liability*

(a)     None of the Debtor, the Liquidating Trustee, or any of their respective principals, employees, agents, affiliates, current and former officers, current and former directors, financial advisors, attorneys, investment bankers, accountants, consultants and other professionals, agents and any of their successors and assigns, shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, advisors, attorneys, affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, including acts or omissions which are the result of negligence, but excluding acts or omissions which are the result of fraud, gross negligence, or willful misconduct or willful violation

of federal or state securities laws or the Internal Revenue Code, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

(b)      Notwithstanding any other provision of the Plan, no holder of a Claim or an Interest, no other party in interest, none of their respective agents, employees, representatives, advisors, attorneys or affiliates, and none of their respective successors or assigns shall have any right of action against the Debtor, the Liquidating Trustee, the Creditors Committee, Frost or any of their respective present or former principals, employees, agents, affiliates, current and former officers, current and former directors, financial advisors, attorneys, investment bankers, accountants, consultants and other professionals, agents and any of their successors and assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, including acts or omissions which are the result of negligence but excluding acts or omissions which are the result of fraud, gross negligence, or willful misconduct or willful violation of federal or state securities laws or the Internal Revenue Code.

### 10.11   *Term of Injunctions or Stays*

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code or otherwise, and existing on the Confirmation Date (excluding any injunctions or stay contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

### 10.12   *Modifications and Amendments*

The Debtor may, alter, amend or modify the Plan under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date and prior to substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, the Debtor institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order under section 1127(b) of the Bankruptcy Code, *provided, however,* that prior notice such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

### 10.13   *Severability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the

original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 10.14   *Revocation, Withdrawal or Non-Consummation*

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtor revokes or withdraws the Plan, or if the Confirmation or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or (iii) constitute an admission of any sort by the Debtor or any other Person.

### 10.15   *Notices*

Any notice, request or demand required or permitted to be made or provided to or upon the Debtor, the Liquidating Trustee under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed and (d) addressed as follows:

For the Debtor:

Ballenger Construction Company
Attn:  Joe C. Ballenger, Sr.
24200 N FM 509
Harlingen, Texas 78550

For the Liquidating Trustee:

TBD in Plan Supplement

With copies to:

LANGLEY & BANACK, INC.
Attn:  David S. Gragg
745 E. Mulberry, Suite 900
San Antonio, Texas 78212
Facsimile:  (210) 735-6889

10.16   *Computation of Time*

In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

Dated this __th day of August, 2013

————————————————
Joe C. Ballenger, Sr.
Chief Executive Officer,
Ballenger Construction Company

**LANGLEY & BANACK, INC.**
745 E. Mulberry, Suite 900
San Antonio, Texas 78212
(210) 736-6600 Telephone
(210) 735-6889 Telecopier

————————————————
DAVID S. GRAGG
State Bar No. 08253300
R. GLEN AYERS
State Bar No. 01467500
ALLEN M. DeBARD
State Bar No. 24065132

**ATTORNEYS FOR BALLENGER**
**CONSTRUCTION COMPANY**